Jon **LINDSAY**, County Judge, Harris County, Texas, et al., Appellants,

v.

Linda **PAPAGEORGIOU**, d/b/a Cherries Cabaret, Appellee.

No. 01–86–00941–CV.

Court of Appeals of Texas, Houston (1st Dist.).

April 28, 1988.

Rehearing Denied May 26, 1988.

Dwight Martin, Asst. Atty. Gen., Ray Elvin Speece, Asst. Dist. Atty. Harris County, John Mahoney, County Attorney's Office, Terry O'Rourke, Asst. County Atty., Austin, for appellants.

Thano Dameris, Houston, for appellee.

Before EVANS, C.J., and SAM BASS and DUGGAN, JJ.

DUGGAN, Justice.

Appellants, Jon Lindsay, County Judge of Harris County; John B. Holmes, Jr., District Attorney for Harris County; Johnny Klevenhagen, Sheriff of Harris County; and Harris County, Texas, appeal from the order of the 295th District Court that: (1) entered a declaratory judgment declaring unconstitutional sections 6(a) and 6(b) of the Regulations of Harris County, Texas, for the Location of Certain Sexually Oriented Commercial Enterprises, No. 875–16–0683 (adopted Sept. 6, 1979, amended June 25, 1985); (2) permanently enjoined the appellants from enforcing the regulations; and (3) awarded appellee attorney's fees. Appellants assert eight points of error.

The regulations in question were adopted by the Commissioners' Court of Harris County, Texas, pursuant to Tex.Rev.Civ. Stat.Ann. art. 2372w (Vernon Supp.1987), the purpose of which is to provide local governments a means of regulating the location of certain sexually oriented commercial enterprises by authorizing cities and counties to adopt regulations to achieve that end.

Section 3(b) of the enabling statute states that only the location of these enterprises may be regulated; section 4(a) sets out the scope of the permissible regulations; section 4(b) provides that the governing body may require a permit for the operation of a restricted enterprise; and section 5(b) states that a violation of a regulation adopted pursuant to the act will be a Class B misdemeanor.

On September 6, 1979, the Commissioners' Court of Harris County, Texas, enacted an "[o]rder adopting regulations of Harris County, Texas for certain sexually oriented commercial enterprises." Section 6(a) of the regulations requires a permit issued by the Sheriff of Harris County to own or operate certain enterprises in those areas of the county outside the corporate limits of a city. Section 6(b) states that before a permit will be issued, the applicant must certify that such enterprise is located a minimum of 1500 feet from:

(1) A child care facility;

(2) A church or place of worship;

(3) A dwelling;

(4) A hospital;

(5) A public building;

(6) A public park;

(7) A school.

Appellee, Linda Papageorgiou, is the owner and operator of Cherries Cabaret, which provides topless female entertainment intended to provide sexual stimulation and gratification to its customers. On June 2, 1986, appellee was arrested by the Harris County Sheriff's Department and charged with a Class B misdemeanor for operating a sexually oriented commercial enterprise in the county and outside the corporate limits of a city, without a permit. Appellee subsequently applied for

a permit and was denied such because her establishment was located within 1500 feet of a residential neighborhood.

Appellee then filed a cause of action in the 295th District Court of Harris County, seeking a declaratory judgment that the regulations are unconstitutional and requesting injunctive relief prohibiting appellants from enforcing them in the future. Appellant Johnny Klevenhagen, the Sheriff of Harris County, stipulated on the record that he would arrest appellee as owner and/or operator of the enterprise in the event that, in the future, she offers topless entertainment to her customers without a permit.

In their first three points of error, appellants assert that the trial court erred in declaring sections 6(a) and 6(b) of the county regulations unconstitutional.

Because there are no findings of fact or conclusions of law in this case, we must uphold the trial court's judgment on any theory supported by the record. *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977).

The record reflects that appellee asserted that the county regulations exceeded the legislative authority granted by article 2372w, and thus violate both Tex. Const. art. III, sec. 1, and art. I, secs. 8 and 19.

■ Appellee's contention that the regulations exceeded the authority granted by the legislature is based on the principle that counties have no general legislative authority, because such authority is expressly reserved to the "[L]egislature of the State of Texas" by article III, section 1 of the Texas Constitution. *Canales v. Laughlin,* 147 Tex. 169, 214 S.W.2d 451 (1948). Appellee argues that the authority to adopt regulations to restrict the location of certain sexually oriented commercial enterprises arises solely from article 2372w, and that the regulations in question go beyond that specific grant.

As noted earlier, article 2372w, section 4(a) sets out the scope of permissible regulations. It provides as follows:

Regulations adopted under this Act may restrict the location of regulated enterprises to particular areas, restrict the density of regulated enterprises, or prohibit the operation of a restricted enterprise within a certain distance of a school, regular place of religious worship, residential neighborhood, or other specified land use the governing body of the city or county finds to be inconsistent with the operation of a restricted establishment.

Section 4(b) provides that:

The city or county may require the obtaining of a permit for the operation of a restricted establishment.

Section 5(b) states that:

Violation of a city or county regulation adopted under this Act is a Class B misdemeanor.

Specifically, appellee claims that the county regulations are invalid for the following reasons:

1) the regulations as adopted are not as authorized by section 4(a);

2) there is no finding of inconsistent land use as required by section 4(a); and

3) there is no authority under section 5(b) for the county to make it a crime to own or operate without a permit.

First, appellee notes that the regulations are backwards because they require her to obtain a permit to own or operate her enterprise without first restricting her in accordance with article 2372w, section 4(a). She argues that the regulations do not attempt to restrict the location of the enterprises to particular areas, or to restrict the density of enterprises as authorized, and that although section 6(b) of the regulations sets forth distancing criteria necessary for the issuance of permits, it does not "prohibit" the location within certain distances of other land use; therefore, it does not "restrict" the appellee in accordance with section 4(a) of the enabling statute.

Appellee argues that the enabling statute states that a permit may be required to operate a "restricted" establishment and that there is no authority to require a permit to own or operate an establishment that has not been "restricted."

Appellants, on the other hand, argue that whether the location of the establishment

is restricted first and a permit to operate is then required, or a permit to operate is required with another provision stating that it will not issue unless location restrictions are met, the result is the same. The two provisions, when read together, result in a permissible restriction and a permissible requirement that a permit be obtained to operate; thus, the only way to lawfully operate a sexually oriented commercial enterprise is to have a permit certifying that location restrictions have been met. *See Jolar Cinema of Houston, Inc. v. City of Houston,* 695 S.W.2d 353 (Tex.App.—Houston [1st Dist.] 1985, no writ).

Although the County Commissioners' Court can exercise only the powers specifically conferred on it by the Texas Constitution or the statutes, it "has the implied authority to exercise a broad discretion to accomplish the purposes intended." *Anderson v. Wood,* 137 Tex. 201, 204, 152 S.W.2d 1084, 1085 (1941). The purpose of article 2372w is to provide local governments a means to remedy the problem of the unrestricted location of certain sexually oriented commercial enterprises.

The enabling statute provides that the governing body may require a permit to operate. The permit is merely a vehicle by which the governing body can regulate the location of the enterprises. The county regulations state that the Sheriff's Department is to inspect and issue permits. The requirement of a permit before operation allows the county to make an intelligent determination about whether the enterprise complies with the location requirements. Therefore, the end result is that the enterprises are "restricted" to certain locations as the statute allows.

Next, appellee claims that the enabling statute does not allow the county to prohibit the operation of an enterprise within a certain distance of all of the land uses listed in section 6(b) of the county regulations. Section 4(a) of the enabling statute allows a governing body to "restrict the location of regulated enterprises to particular areas, restrict the density of regulated enterprises, *or* prohibit the operation of a restricted enterprise within a certain distance of a school, regular place of worship, residential neighborhood, *or* other specified land use ..." (emphasis added). Appellee argues that the use of the word "or" rather than "and" after the word "neighborhood," limits the county to just one choice, i.e., it can restrict an enterprise within a certain distance of only one of the land uses, but not some or all of them.

Appellee claims that this is so because the first use of "or" in the sentence presents a choice of only one option, i.e., the county can "either" restrict the enterprises to particular areas of town "or" prohibit their location within a certain distance of other land uses, but not both because it would be impossible to "restrict these businesses to a particular area *and* disperse them throughout the county." (Emphasis added.)

However, the statute does not say "disperse them throughout the county." It clearly permits the governing body to restrict them to particular areas, restrict their density, or prohibit them within certain distances, and it is possible to do one, two, or all three, e.g., the county could restrict them to a specific area, *and* restrict them within a certain distance of each other, *and* prohibit their distance within other land uses, all within the specified area. Therefore the first use of "or" does not limit the county to just one of the permissible options, nor does the second use of "or" require such a limitation.

When the legislature enacts a statute, it is presumed that a just and reasonable result is intended and that the public interest is favored over any private interest. Tex.Gov't Code Ann. sec. 311.021 (Vernon Supp.1987). Section 311.023 requires the court, in construing a statute, to consider the object sought to be attained and the consequences of a particular construction, while sections 312.005 and 312.006 require that we ascertain the legislative intent and that a liberal construction be given to achieve a purpose and promote justice.

Further, the Texas Supreme Court has held that the words "or" and "and" in a statute can be interchanged when it is necessary to effectuate the legislature's in-

tent, where to do so would not render the statute meaningless, and where not to do so would result in an absurdity. *Robinson v. Reliable Life Ins. Co.*, 569 S.W.2d 28 (Tex.1978); *Bayou Pipeline Corp. v. Railroad Comm'n,* 568 S.W.2d 122 (Tex.1978); *Benny v. Bell,* 291 S.W.2d 369, 371–72 (Tex.Civ.App.—Dallas 1956, no writ).

. . It would result in an absurdity to construe the statute to mean that the county could choose only one land use from which to prohibit the location of the enterprises. Moreover, a construction of the statute to allow a choice of one, some, or all would not render the statute meaningless, as appellee suggests, because the options in section 4(a) are not mutually exclusive of one another, as she contends. Therefore, we construe section 4(a) of article 2372w to allow the governing body to choose one, some, or all of the permissible options allowed.

Next, appellee complains that the county failed to make "findings" that the "other specified land uses," i.e., the child care facilities, hospitals, public buildings, and public parks, are inconsistent with the operation of sexually oriented commercial enterprises, before prohibiting location within a certain distance, as required by section 4(a).

Section 1(a) of the enabling statute states that the legislature finds that "the unrestricted location of the certain sexually oriented commercial enterprises may be detrimental to public health, safety and welfare by contributing to the decline of residential and business neighborhoods and the growth of criminal activity."

The preamble to the county regulations states that "the Commissioners' Court of Harris County has considered the matter and deems it appropriate to adopt Regulations regulating the location of Certain Sexually Oriented Commercial Enterprises to protect the public health and safety and to prevent violations of state law ...*"; section 6(b) of the regulations states that the "Commissioners' Court hereby finds to be inconsistent with the operation of a restricted establishment, to wit: ...," and then lists the land uses in question. There

is no requirement in the statute that the governing body publish a "finding." It is sufficient that the county regulations state that the Commissioners' Court found the other land uses to be inconsistent.

Additionally, appellee claims that the statute does not give the county the authority to make the operation of an enterprise without a permit a Class B misdemeanor. Appellee notes that section 5(b) of the statute provides that a violation of a "regulation" adopted under the statute is a Class B misdemeanor, and that the only "regulations" permitted by the statute are those listed in section 4(a) to restrict location, and therefore the requirement of a permit as allowed by section 4(b) is not a "regulation."

The enabling statute authorizes the county to require the obtaining of a permit for the operation of a restricted enterprise. As noted earlier, the use of the permit is simply a vehicle by which the governing body may regulate the location. Therefore, the requirement of a permit tied to the restriction is a regulation adopted pursuant to the statute, the violation of which is a Class B misdemeanor.

Finally, appellee contends that the enabling statute does not grant the county the authority to require a permit for the "owning" of a restricted enterprise without a permit, much less the authority to make the violation of such a Class B misdemeanor.

The purpose of the enabling statute is to provide local governments a means to remedy the problem of the unrestricted location of certain enterprises.

The county, in adopting its regulations, has attempted to effectuate that intent by regulating the locations through the requirement of a permit to own or operate. "Sexually Oriented Commercial Enterprise" is defined in the regulations as an enterprise "whose major business is the offering of a service which is intended to provide sexual stimulation or sexual gratification to the customer; ..."

The word "owner," as used in connection with a business or enterprise, connotes an

operation of that business involving some commercial activity or mercantile function. *Courtney v. State,* 639 S.W.2d 16 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd). The obvious intent of the inclusion of the words "own or operate" is to enable the county to enforce the regulations against both the operator of the enterprise and an absent owner. This is to prevent an elusive owner who does not operate the business from evading enforcement, thus defeating the purpose of the regulation. If only the operator or manager were subject to enforcement, there would be no means to prevent the owner from simply hiring a new manager each time one was arrested for not having a permit to operate. The business itself could continue to operate in violation of the restrictions. As stated before, the requirement of a permit as a means to restrict location is a "regulation" adopted pursuant to the enabling statute and therefore the violation of such is a Class B misdemeanor.

In sum, the Harris County regulations do not exceed the authority of the enabling statute and thus are not in violation of article III, section 1 of the Texas Constitution.

Appellee also asserts that the regulations violate article I, section 8 of the Texas Constitution, which guarantees free speech and freedom of expression. These guarantees are identical to the protection afforded by the First Amendment to the United States Constitution.

■■■ Topless dancing, like nude dancing, is protected by the First Amendment. *Schad v. Borough of Mount Ephraim,* 452 U.S. 61, 101 S.Ct. 2176, 68 L.Ed.2d 671 (1981). When a land use regulation infringes upon a protected liberty, it must be narrowly drawn and must further a substantial government interest to satisfy constitutional protections. *Id.* Regulations enacted for the purpose of restricting speech on the basis of content are presumptively violative of free speech; however, time, place, and manner regulations that are content-neutral are acceptable when they are designed to serve a substantial government interest and do not unreason-

ably limit alternative avenues of communication. *City of Renton v. Playtime Theatres, Inc.,* 475 U.S. 41, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986). A regulation is content-neutral if the predominant concerns of the legislative body are with the secondary effects of activities and not the content of the activities. *Id.* at 929.

■■ The Harris County regulations do not ban sexually oriented commercial enterprises altogether; to the contrary, they merely prohibit location within a certain distance of enumerated land uses. Therefore, the regulations are a form of time, place, and manner restriction. The preamble to the enabling statute demonstrates a predominant concern with the adverse secondary effect of the unrestricted location of the enterprises on the public health, safety, and welfare by their contribution to the decline of residential and business neighborhoods and the growth of criminal activity, and not with the content of such activities.

Therefore, the regulations are content-neutral inasmuch as they are not directed at content or the suppression of free expression.

Appellee contends that appellants failed to meet their burden of proof of showing that the regulations serve a substantial government interest or that they allow for reasonable alternative avenues of communication. She claims that appellants failed to call any witnesses or to introduce any evidence to meet this constitutional burden of proof.

The appellants stipulated on the record that the Commissioners' Court considered only the proceedings conducted just prior to the adoption of the regulations.

The proceedings included comment by State Representative Gene Green that various support groups from the Harris County area expended a great amount of time and effort in getting the enabling legislation passed. He stated that many of the support group members traveled to Austin to impress upon the legislators the problems they were having with the sexually oriented commercial enterprises. The pro-

ceedings also included a public hearing on the matter, at which various citizens, including a superintendent of schools, pastors of churches, and presidents of homeowner associations, spoke about the problems the unrestricted sexually oriented commercial enterprises were causing in their areas.

Their collective comments are paraphrased as follows:

1) The enterprises alter the character of the neighborhoods and contribute to the deterioration of the moral standards of the community.

2) The enterprises are located near the schools and are detrimental to the mental health and safety of the children.

3) The enterprises are a blatant exploitation of the female sex, presenting a negative influence on young adults.

4) The enterprises have caused an increase in crime and drugs in the surrounding areas.

5) The enterprises have caused a decrease in property values in the neighborhoods.

In *Young v. American Mini Theatres, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976), the Supreme Court recognized that a local government's interest in attempting to preserve the quality of urban life is one that must be accorded the highest respect.

The Commissioners' Court was entitled to determine that significant problems were linked to the unrestricted location of the enterprises in question. It is apparent as a matter of experience or knowledge that these types of activities pose problems of the nature identified by the citizens who spoke at the public hearing. Therefore, the Harris County regulations, adopted pursuant to statutory authority, were designed to serve a substantial government interest.

Further, it is also apparent that the regulations allow for reasonable avenues of communication. They do not totally ban operation of all such enterprises in the county, nor do they limit the enterprises in number.

Appellee argues that appellants failed to make any offer of proof that there were any alternative sites available to her that would comply with the regulations.

■ The regulations limit only the locations where appellee may operate her enterprise; therefore, she has not been denied reasonable opportunities to conduct her business without violating the regulations. The county is under no duty to insure that appellee be afforded a commercially viable site in which to locate. *City of Renton v. Playtime Theatres, Inc.*, 106 S.Ct. at 932.

The regulations in question impose only a minimal or incidental burden on protected expression, as they are nothing more than a limitation on the place where such expression may be exercised; thus, they meet appellee's First Amendment challenge.

■ Finally, appellee asserts that the county regulations amount to a taking of her property, to wit: the ownership of her business, without due course of law, in violation of article I, section 19 of the Texas Constitution. The protections afforded by this section of the Texas Constitution are the same as those provided by the Fifth Amendment of the United States Constitution.

Appellee cites *SDJ, Inc. v. City of Houston*, 636 F.Supp. 1359 (S.D.Tex.1986), *aff'd*, 837 F.2d 1268 (5th Cir.1988) (not yet reported), which involved the same constitutional attack on a similar land use ordinance enacted by the City of Houston. In that case, the court discussed the various permissible methods employed in land use controls to avoid a taking without due process. However, that discussion involved enterprises that were in existence at the time of the enactment of the ordinance. In the instant case, appellee was not in business at the time the regulations were adopted or amended.

Appellee argues that although she leases the land on which she operates, she has invested a sizeable sum in her business at its current location and will lose her investment if the regulations are enforced. However, she is free to move her business elsewhere or to convert it to an unregulat-

ed enterprise. Moreover, the Supreme Court has held that a zoning ordinance restricting the use of property and causing reduction in value is not a taking. *Agins v. Tiburon,* 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980). Therefore the regulations do not amount to a taking of her business without due process.

Appellee's challenges to the constitutionality of the county regulations are without merit, and appellants' first three points of error are sustained.

■ The general rule is that equity will not enjoin the enforcement of the criminal law. *State v. Logue,* 376 S.W.2d 567 (Tex. 1964). The exception to that rule is when the criminal statute is unconstitutional and its enforcement will result in an irreparable injury to property rights. *Crouch v. Craik,* 369 S.W.2d 311 (Tex.1963).

Having found the county regulations to be constitutional, it follows that we determine that the trial court erroneously issued the permanent injunction by misconstruction of the law, and the injunction order is void. In view of this disposition, it is unnecessary to address appellants' remaining points of error.

The injunction is dissolved, and the award of attorney's fees to appellee is set aside. The judgment of the trial court is reversed, and judgment is rendered for appellants. All costs are charged to appellee.