**MJR'S FARE OF DALLAS, INC. d/b/a, The Fare, et al., Appellants,**

v.

**The CITY OF DALLAS, Appellee.**

No. 05–89–00765–CV.

Court of Appeals of Texas, Dallas.

June 21, 1990.

Rehearing Denied July 12, 1990.

Steven H. Swander, Dallas, for appellants.

Sally Jo Field, Dallas, for appellee.

Before STEWART, THOMAS and KINKEADE, JJ.

## OPINION ON REHEARING

KINKEADE, Justice.

The City of Dallas filed a motion for rehearing contending that the doctrines of res judicata and collateral estoppel bar plaintiffs' claims. Because we agree with the City of Dallas, we grant its motion, withdraw our February 26, 1990 opinion, and vacate the judgment entered on that same date. The following is now the opinion of this Court.

MJR's Fare of Dallas, Inc. d/b/a The Fare and other existing businesses (collectively "MJR") appeal the granting of a declaratory judgment upholding the constitutionality of amended City of Dallas Zoning Ordinance No. 19196 (the "Ordinance"). MJR argues that the trial court erred when it found that the doctrines of res judicata and/or collateral estoppel barred MJR's claims in the instant case. MJR further argues that the Ordinance violates the Texas Constitution since: (1) the distance restrictions exceed Dallas's delegated zoning authority and result in an unlawful taking; (2) the female gender-based classifications conflict with the Equal Rights Amendment; and (3) prior law already provides similar regulations and thus preempts the Ordinance. Finally, MJR argues that the Ordinance's substantially overbroad definition of nudity violates the United States Constitution.

### Res Judicata/Collateral Estoppel

In its first point of error, MJR contends that the trial court erred when it held that a prior federal declaratory judgment, which involved MJR making facial challenges to the same ordinance under attack in this case, precludes MJR's recovery in this suit pursuant to the doctrines of res

judicata and/or collateral estoppel. MJR asserts that it now for the first time facially challenges the Ordinance for violations of the Texas Constitution, while in the prior federal case it only facially challenged the Ordinance for violations of the United States Constitution. Further, MJR asserts that it bases its United States Constitutional challenges to the Ordinance in the instant case on overbreadth, alleging that the Ordinance includes more activities than Dallas may permissibly regulate, rather than vagueness as it urged in the federal court proceedings. Finally, MJR contends that, because Dallas amended the Ordinance's nudity definition subsequent to the federal court decision, MJR can now challenge this amended definition under the United States Constitution.

■ Because MJR originally challenged the Ordinance in federal court, the state court must apply federal law to determine whether res judicata bars the facial challenges made in the instant case. *Jeanes v. Henderson,* 688 S.W.2d 100, 103 (Tex.1985). In its federal court action, MJR sought a declaratory judgment and injunctive relief pursuant to the Federal Declaratory Judgment Act. *See* 28 U.S.C. §§ 2201 and 2202. The rules of res judicata actually comprise two doctrines concerning the preclusive effect of a prior adjudication. The first such doctrine is "claim preclusion," or true res judicata. It treats a judgment, once rendered, as the full measure of relief to be accorded between the same parties on the same "claim" or "cause of action." The effect of a judgment extends to litigation of all issues relevant to the same claim between the same parties, whether or not raised at trial. *Kaspar Wire Works, Inc. v. Leco Eng'g & Mach., Inc.,* 575 F.2d 530, 535 (5th Cir.1978).

The second doctrine, collateral estoppel or "issue preclusion," recognizes that suits addressed to particular claims may present issues relevant to suits on other claims. In order to effectuate the public policy in favor of minimizing redundant litigation, issue preclusion bars the relitigation of issues actually adjudicated, and essential to the judgment, in a prior litigation between the same parties. *Kaspar,* 575 F.2d at 535–36. The law instills a declaratory judgment with the full force and effect of a final judgment and shall be reviewable as such. *Kaspar,* 575 F.2d 530 at 535–37; 28 U.S.C. § 2201.

The trial court stated in its conclusions of law that the prior federal declaratory judgment was rendered by a court of competent jurisdiction and that such judgment was final in its holding on the merits that all provisions of the Ordinance are constitutional. The trial court further stated that the cause of action involved in the prior federal proceeding and the cause of action before the court were the same. We agree with the trial court's conclusion that the doctrines of res judicata and collateral estoppel bar MJR's claims, and we sustain the City of Dallas's assignment of error on rehearing. However, out of an abundance of caution, the trial court also addressed MJR's constitutional challenges to the Ordinance and found the Ordinance did not violate either the Texas or United States Constitutions. Because we agree with the trial court's determinations, we affirm the trial court's judgment on all issues.

*Facts*

MJR, a business licensed by the Texas Alcoholic Beverage Commission, regularly features topless dancers as entertainment for its customers. On June 12, 1986, the Dallas City Plan Commission began review of proposed Ordinance No. 19196. This proposed Ordinance sought to add the classification, "Sexually Oriented Businesses", to the comprehensive zoning ordinance of Dallas which provides for licensing and distance restrictions applicable to existing businesses like MJR. In reviewing the proposed Ordinance, the plan commission considered numerous studies from various cities. These studies primarily focused on the relationships among concentrations of sexually oriented businesses, crime, and property values. Although the plan commission did not undertake a similar study of Dallas, it did consider a map of Dallas that indicated areas in which sexually oriented businesses could locate under the proposed Ordinance. Additionally, the plan

commission heard public testimony from individuals and groups which both supported and opposed the proposed Ordinance. Subsequently, the plan commission voted unanimously to recommend adoption of an ordinance that regulated sexually oriented businesses.

On June 18, 1986, the Dallas City Council considered, in addition to the studies presented to the plan commission and their recommendation, a study prepared by the Dallas Police Department which compared crime rates in two commercial sections of Dallas, one with sexually oriented businesses and one without any of those establishments. The police study showed a 90 percent higher crime rate in the district with the sexually oriented businesses. The council also heard public testimony in favor of the proposed Ordinance. After considering all this information, the council unanimously voted to enact the Ordinance.

### Zoning Authority

■ In its third point of error, MJR contends that the Ordinance's distance restrictions violate the Texas Constitution because the restrictions exceed the authority delegated to Dallas by the Zoning Enabling Acts and the Alcoholic Beverage Code. The Zoning Enabling Acts (the "Acts") grant a municipality the power to divide a city into zoning districts and to regulate the use of buildings within those districts. *See* TEX.LOCAL GOV'T.CODE ANN. §§ 211.-001–211.013 (Vernon 1988). MJR argues, however, that the Acts fail to specifically grant a city the power to provide distance restrictions regardless of a building's district. Further, MJR argues that the Alcoholic Beverage Code regulates the location restrictions applicable to nightclubs serving alcoholic beverages. *See* TEX.ALCO.BEV. CODE ANN. § 109.31 (Vernon 1978) and § 109.33 (Vernon Supp.1990). Accordingly, MJR asserts that this attempt by Dallas to use its zoning power to implement location restrictions conflicts with these state statutes and thus violates the Texas Constitution. *See* TEX.CONST. art. XI, § 5.

■ MJR misconstrues the powers available to Dallas, a home-rule city. A home-rule city acts by constitutional authority rather than through power conferred on it by the legislature. *City of El Paso v. State ex rel. Town of Ascarate* 209 S.W.2d 989, 994 (Tex.Civ.App.—El Paso 1947, writ ref'd). Home-rule cities possess the full power of self-government and look to acts of the legislature not for grants of power, but only for limitations on their powers. *City of Corpus Christi v. Continental Bus Systems, Inc.*, 445 S.W.2d 12, 17 (Tex.Civ.App.—Austin 1969), *writ ref'd n.r.e., per curiam* 453 S.W.2d 470 (Tex. 1970). When the constitution addresses questions that deal with public safety, health, morals, general welfare, and questions properly within the scope of the city's police power, it vests home-rule cities with broad discretion. *John v. State*, 577 S.W.2d 483, 484–85 (Tex.Crim.App.1979); *Driggs v. City of Denison*, 420 S.W.2d 446, 448 (Tex.Civ.App.—Dallas 1967, no writ). The Ordinance in question here sought to protect the public safety through decreased crime rates and to promote the general welfare through the protection of property values and elimination of urban blight. Dallas possessed the power to enact just this type of ordinance.

■ MJR also argues that the language in the Ordinance conflicts with the language contained in the Zoning Enabling Acts. The pertinent part of the statute provides that "a municipality may divide the municipality into districts" and "[w]ithin each district, the governing body may regulate the erection, construction, reconstruction, alteration, repair, or use of buildings, other structures, or land." TEX.LOCAL GOV'T.CODE ANN. § 211.005(a) (Vernon 1988) (formerly TEX.REV.CIV.STAT.ANN. art. 1011b (Vernon 1964)). Since Dallas possesses the powers of a home-rule city and the statute provides no prohibition against regulations which address the dispersion of sexually oriented businesses, Dallas may rightfully enact an ordinance which regulates the location and use of buildings and land within a zoning district.

■ MJR next argues that the Alcoholic Beverage Code controls the promulgation of location restrictions of businesses

selling alcoholic beverages. *See* Tex.Alco. Bev.Code Ann. § 109.31 (Vernon 1978) and § 109.33 (Vernon Supp.1990). These cited provisions allow a city the right to enact regulations which place limits on the *sale* of alcohol. However, these statutes place no prohibition on a home-rule city which accomplishes this purpose through the use of its zoning ordinances. Further, these statutes provide no prohibition against regulations which address the dispersion of sexually oriented businesses as contemplated in the Ordinance. The Ordinance only seeks to regulate a secondary activity and not the *sale* of alcohol. Further, the cited statute places no restrictions on the type of regulations a home-rule city may enact to accomplish that purpose. No conflict exists. Because no conflict exists between the cited statutes and the Ordinance, no constitutional violation exists. We overrule MJR's third point of error.

### Unlawful Taking

■ In its sixth point of error, MJR contends that the classification of adult cabarets as sexually oriented businesses which cause harmful secondary effects, without a specific factual judicial showing to that effect, results in an unlawful taking under the Texas Constitution. *See* Tex. Const. art. I, § 19. MJR argues that since Dallas failed to produce evidence which specifically showed that adult cabarets, now in existence in Dallas, caused harmful secondary effects, the Ordinance results in an unlawful taking with its imposition of distance restrictions which require affected adult cabarets to terminate their entertainment or relocate. MJR analogizes this Ordinance to ordinances which declare a business a nuisance.

Zoning regulations which restrict the use of property and cause a reduction in value do not constitute a taking under article I, section 19 of the Texas Constitution. *Lindsay v. Papageorgiou,* 751 S.W.2d 544, 551 (Tex.App.—Houston [1st Dist.] 1988, writ denied), *citing Agins v. Tiburon,* 447 U.S. 255, 259, 100 S.Ct. 2138, 2140, 65 L.Ed.2d 106 (1980). Municipal zoning ordinances which regulate the termination of nonconforming uses under reasonable conditions fall within the scope of municipal police powers. *City of Univ. Park v. Benners,* 485 S.W.2d 773, 778 (Tex.1972), *appeal dismissed,* 411 U.S. 901, 93 S.Ct. 1530, 36 L.Ed.2d 191 (1973). In *Benners,* the court held that property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. Further, a party which seeks to challenge a zoning ordinance has the extraordinary burden of showing that the city unlawfully exercised its police power and that no facts or conditions exist in support of that exercise of the police power. Finally, unless the complainant demonstrates that the challenged ordinance represents a clear abuse of municipal discretion or conclusive evidence exists that the zoning ordinance acts arbitrarily either generally or as to a particular property, courts may not interfere. The *Benners* court upheld the termination of a nonconforming use where the zoning ordinance allowed the property owner a reasonable opportunity to recoup his investment. *Id.* at 778–79.

With its stated goals of crime control, protection of property values, and prevention of urban blight, the Ordinance in the present case demonstrates a proper exercise of Dallas's police power. *See Dumas v. City of Dallas,* 648 F.Supp. 1061, 1069 (N.D.Tex.1986), *aff'd sub nom. FW/PBS, Inc. v. City of Dallas,* 837 F.2d 1298 (5th Cir.1988), *aff'd in part and rev'd in part,* —— U.S. ——, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990) (issues addressed by the Supreme Court not in issue here). MJR attempts to analogize the Ordinance to ordinances which declare a business a nuisance on the basis that the Ordinance limits itself to zoning restrictions on sexually oriented businesses and no others. Dallas, however, has clearly shown that sexually oriented businesses directly impact Dallas's stated goals. Prior to enactment of the Ordinance, Dallas subjected the Ordinance to a more stringent process of analysis and study than Harris County did when it enacted a similiar ordinance which the courts have upheld. *See Papageorgiou,* 751 S.W.2d at 544. Dallas heard public testi-

mony from groups which both supported and opposed the Ordinance and considered numerous studies from other cities which had sought to achieve the same goals as Dallas through the adoption of similar ordinances. Further, Dallas considered a map to determine if the sexually oriented businesses had other areas in which to relocate, and a Dallas police crime comparison study. Additionally, the Ordinance provides for a three year period of amortzation to allow MJR sufficient time to recoup its investment and MJR failed to show that it could not recoup its investment within that period of time. Because enactment of the Ordinance falls within the scope of Dallas's police power and provides for a three year period of amortization and because MJR failed to sustain its burden of proving that Dallas abused its police powers with its enactment of the Ordinance, no unlawful taking has occurred. We overrule MJR's sixth point of error.

### Gender-based discrimination

■ In its fourth point of error, MJR contends that the Ordinance, with its gender-based classifications, violates the Equal Rights Amendment of the Texas Constitution. *See* TEX.CONST. art. I, § 3a. MJR argues that the Ordinance violates the constitution because its nudity definition utilizes a gender-based classification which requires the complete and opaque covering of the areola of the female breast without a similar requirement of live male performers.

The Equal Rights Amendment requires that Texas courts subject sex-based classifications to strict judicial scrutiny. *In re McLean*, 725 S.W.2d 696, 698 (Tex.1987). Equal rights claims must undergo two-part inquiries. First, we must determine whether the law discriminates against one sex solely on the basis of gender. Second, if we find the law discriminatory, this discrimination only survives judicial scrutiny if the proponent proves that no other means exist to protect the state's compelling interest. *Id.* at 698. Initially, the burden of proof falls on the complainant to prove such discrimination exists. If satisfied, the burden of proof then shifts to the

proponent of the discriminatory law, who must prove no other means exists to protect the state's compelling interest. *Id.*

MJR introduced the Ordinance's nudity definition into evidence. The definition provides:

(13) NUDITY or a STATE OF NUDITY means:

(A) the appearance of a human bare buttock, anus, male genitals, female genitals, or female breast, or

(B) a state of dress which fails to opaquely cover a human buttock, anus, male genitals, female genitals, or areola of the female breast.

MJR asserts that it meets its burden of proof because the inclusion of the term "areola of the female breast" without similar requirement for male performers unfavorably discriminates against females. MJR also argues that Dallas failed to meet its burden of proof because Dallas proved no nexus between the clothing worn by a female dancer and Dallas's interest in controlling undesirable "secondary" effects attributable to adult cabarets.

■ The law allows sex-based distinctions if physical characteristics require these distinctions. *Mercer v. Board of Trustees*, 538 S.W.2d 201, 206 (Tex.Civ. App.—Houston [14th Dist.] 1976, writ ref'd n.r.e.). Dallas introduced undisputed expert testimony that (1) physiological and sexual distinctions exist between the male and female breast; (2) female breasts differ both internally and externally from male breasts; and (3) the female breast, but not the male breast, is a mammary gland. Dallas argues that since MJR failed to rebut this testimony, MJR failed to meet its burden of proving that the law discriminated against females solely on the basis of gender. Because we agree with the City of Dallas that MJR failed to meet the first prong of the strict judicial scrutiny inquiry, we overrule its fourth point of error.

### Preemption

■ In its fifth point of error, MJR contends that the Ordinance violates the Texas Constitution because the Texas Alco-

holic Beverage Code preempts Dallas's authority to regulate topless bars serving alcohol. MJR argues that the scope of the Code includes control over the conduct of the permittee in the entertainment that it provides; therefore, the Texas Constitution precludes additional regulation by Dallas of the same area. *See* TEX.CONST. art. XI, § 5; TEX.ALCO.BEV.CODE ANN. § 104.01(6) (Vernon Supp.1990).

MJR misinterprets the Code's preemption provision, which speaks only to the governance of the manufacture, sale, distribution, transportation, and possession of alcoholic beverages. *SDJ, Inc. v. City of Houston*, 837 F.2d 1268, 1280 (5th Cir. 1988); *see* TEX.ALCO.BEV.CODE ANN. § 1.06 (Vernon 1978). By enactment of the Ordinance, Dallas added the classification, "Sexually Oriented Businesses," to its comprehensive zoning ordinance which provides for licensing and distance restrictions. While the Alcoholic Beverage Code precludes some types of local regulation, it places no limitation on Dallas's zoning powers and regulation of other secondary activities. *SDJ, Inc.*, 837 F.2d at 1280, *citing Young, Wilkinson & Roberts v. City of Abilene*, 704 S.W.2d 380, 382 (Tex.App.—Eastland 1985, writ ref'd n.r.e.); *Banknote Club and Stan's Boilermaker v. City of Dallas*, 608 S.W.2d 716, 718 (Tex.Civ.App.—Dallas 1980, writ ref'd n.r.e.). Because the Alcoholic Beverage Code regulates only the manufacture, sale, distribution, transportation, and manufacture of alcoholic beverages, it does not preempt Dallas's zoning power to regulate secondary activities by zoning ordinances. We overrule MJR's fifth point of error.

## UNITED STATES CONSTITUTIONAL CHALLENGE

### *Overbreadth*

■ In its second point of error, MJR contends that the Ordinance violates the United States Constitution with its substantially overbroad definition of nudity. MJR argues that the overbroad definition of nudity contained within the Ordinance includes more activities, such as requirement that dancers wear opaque clothing over the areola of the female breast and to cover the human buttock in order for the distance restrictions not to apply, than Dallas may permissibly regulate under the First and Fourteenth Amendments. Therefore, MJR argues that the Ordinance goes beyond any supposed link between sexually explicit activity and harmful secondary effects associated with sexually oriented businesses.

To sustain a constitutional challenge, an ordinance which incidentally impacts on First Amendment rights must undergo a four-part analysis. *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 1679, 20 L.Ed.2d 672 (1968). This type of ordinance passes scrutiny (1) if it falls within the constitutional power of the government; (2) if it furthers an important or substantial governmental interest; (3) if no relationship exists between the governmental interest and the suppression of free expression; and (4) the incidental restriction on the alleged First Amendment freedom is no greater than is essential to the furtherance of that interest. *Id.*

The ordinance involved here clearly meets the first three elements of the *O'Brien* test. *Dumas*, 648 F.Supp. at 1069. First, the police power of Dallas encompasses the power to enact this type of zoning and regulatory ordinance. Second, the Ordinance furthers the important and substantial governmental interests of crime control, protection of property, and prevention of urban blight. Third, as evidenced by the reports of both the plan commission and the city council, Dallas demonstrated that no relationship exists between the governmental interests and the suppression of free expression. *Id.*

MJR essentially asserts that Dallas failed to meet the final element of the *O'Brien* test, which requires Dallas to show that the incidental restriction on MJR's First Amendment freedom is no greater than is essential to the furtherance of the governmental interest. MJR contends that the Ordinance's overbroad definition of nudity brings legitimate theatrical performances featuring nudity scenes within the sweep of the Ordinance's regulations, and therefore, the Ordinance includes

577

more activities than Dallas may permissibly regulate under the Constitution. The Ordinance within its definition section, however, limits the definition of adult cabarets or theatres to those which "regularly feature" nudity. *See* Dallas City Code Chap. 41A, § 2(a) (June 18, 1986). Further, this definition of adult cabaret or theatre survived a vagueness challenge in the federal court. *Dumas*, 648 F.Supp. at 1075–76. Finally, the studies reviewed by the plan commission and the city council clearly link adult cabarets to the delineated harmful secondary effects Dallas sought to prevent. Accordingly, the Ordinance meets the fourth element of the *O'Brien* test. Because the Ordinance passes scrutiny under the *O'Brien* test, we overrule MJR's second point of error.

## CONCLUSION

We find that the doctrines of res judicata and collateral estoppel bar MJR's claims, and further find no violation of either the Texas or United States Constitutions. Accordingly, we affirm the judgment of the trial court.