ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

July 26, 2007

The Honorable José R. Rodríguez
El Paso County Attorney
500 East San Antonio, Room 503
El Paso, Texas 79901

Opinion No. GA-0558

Re: Whether a home-rule municipality may lease or sell a portion of an existing city park to a school district (RQ-0566-GA)

Dear Mr. Rodríguez:

On behalf of the Ysleta Independent School District (the "District"), you ask several questions about a home-rule municipality's authority to lease or sell a portion of an existing city park to a school district.[1] You explain that the District currently seeks to secure real property on which to construct new schools in the City of El Paso (the "City"), but it has been unable to acquire useable land. *See* Request Letter, *supra* note 1, at 2. After study, the District is "contemplating securing the use of city [parkland] through a long[-]term lease or conveyance from the City . . . for construction of a school." *Id.* You further explain that the proposal would provide the District

> with much needed real property in a strategic location, at what could be a nominal cost. The City . . . , in turn, benefits from this arrangement by allowing its citizens secure access [to] and use of certain facilities located within the school campus at no added expense to the municipal taxpayer. Both the City . . . and [the District] have considered the potential benefits of this arrangement and would like to move forward with securing this land and construction of school facilities. . . . There does not appear to be any deed restrictions on the [City's] authority to convey the land or on the use of the [parkland].

*Id.*; *see also id.* at 3 (explaining that the land was conveyed in fee simple to the City as the result of the subdivision-platting process and "cannot be subject to any reservations, restrictions, or easements").

---

[1] *See* Letter from Honorable José R. Rodríguez, El Paso County Attorney, to Honorable Greg Abbott, Attorney General of Texas, at 1 (Jan. 29, 2007) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

Based on these facts, you ask four questions:

1.   Does a home[-]rule municipality have the authority to enter into a long[-]term lease with an independent school district, covering a portion of an existing city park, and to include in the instrument the right of the school district to renew the lease for an indefinite period (exceeding 40 years) at the end of the primary term without conducting an election or publishing notice and taking bids?

2.   Does a home[-]rule municipality have the authority to convey fee simple title to a portion of an existing city park to an independent school district without conducting an election or publishing notice and taking bids as might be required in the event of sale to a private party?

3.   If the answer to either 1 or 2 above is in the affirmative, what steps are required of the home[-]rule municipality and the independent school district to [effect] the conveyance or lease of city [parkland] to an independent school district for the purpose of [constructing] a public school?

4.   If the answer to number 1 above is in the affirmative, would the independent school district have the authority to expend school district funds for the purpose of constructing a school building and related facilities upon the leased property?

*Id.* at 1.

## I.    Relevant Statutes

As a home-rule municipality, the City "possess[es] the full power of self government and look[s] to the Legislature not for grants of power, but only for limitations on [its] power." *Dallas Merch.'s & Concessionaire's Ass'n v. City of Dallas*, 852 S.W.2d 489, 490–91 (Tex. 1993) (citing *MJR's Fare of Dallas v. City of Dallas*, 792 S.W.2d 569, 573 (Tex. App.—Dallas 1990, writ denied)). In our opinion, four statutes have the potential to limit the City's home-rule authority with respect to the issue you raise: (1) Local Government Code section 253.001; (2) Local Government Code section 272.001; (3) Local Government Code section 272.005; and (4) Parks and Wildlife Code chapter 26. We will lay out the relevant provisions in turn.

First, section 253.001 of the Local Government Code authorizes a municipal governing body to "sell and convey land or an interest in land that the municipality owns, holds, or claims as a public . . . park." TEX. LOC. GOV'T CODE ANN. § 253.001(a) (Vernon 2005). The municipality generally may not sell parkland unless the sale is approved by a majority of those voting in an election

considering the issue. *See id.* § 253.001(b); *see also id.* § 253.001(e), (f), (i) (listing conveyances that are not subject to election requirements). And parkland that is approved for sale may be sold "by public auction or by sealed bid." *Id.* § 253.008(a).[2] Section 253.001 does not apply to a lease of land, nor does it apply to a municipality's conveyance of parkland to an entity that has the power of eminent domain, such as a school district. *See Walker v. City of Georgetown*, 86 S.W.3d 249, 257–58 (Tex. App.—Austin 2002, pet. denied) (finding that section 253.001 does not apply to the lease of land); *Bolton v. City of Waco*, 447 S.W.2d 718, 720 (Tex. Civ. App.—Waco 1969, writ ref'd n.r.e.) (finding that section 253.001 does not apply to a conveyance to an entity with eminent-domain powers); *accord City of San Antonio v. Congregation of Sisters of Charity*, 360 S.W.2d 580, 582–83 (Tex. Civ. App.—Waco 1962, writ ref'd n.r.e.); *El Paso County v. City of El Paso*, 357 S.W.2d 783, 786–87 (Tex. Civ. App.—El Paso 1962, no writ); *see also* TEX. EDUC. CODE ANN. § 11.155(a) (Vernon 2006) (authorizing a school district to exercise eminent-domain powers). Section 253.001 thus is not relevant to any of the issues you raise.

Second, section 272.001 regulates a political subdivision's sale or exchange of real property, but it does not apply to a lease. *See* TEX. LOC. GOV'T CODE ANN. § 272.001 (Vernon 2005); *Walker*, 86 S.W.3d at 258-60 (finding that section 272.001 does not apply to the lease of land). A municipality is a political subdivision of the state. *See City of Galveston v. State*, 217 S.W.3d 466, 473–74 (Tex. 2007); *see also Bowling v. City of El Paso*, 525 S.W.2d 539, 540–41 (Tex. Civ. App.—El Paso 1975, writ ref'd n.r.e.) (applying section 272.001's statutory predecessor, article 5421c-12 of the Revised Civil Statutes, to land owned by a municipality). Under section 272.001(b), a real property interest conveyed to a governmental entity with eminent-domain powers, such as a school district, is subject to one requirement: It "may not be conveyed, sold, or exchanged for less than the fair market value of the land or interest unless the conveyance, sale, or exchange is with one or more abutting property owners who own the underlying fee simple." TEX. LOC. GOV'T CODE ANN. § 272.001(b) (Vernon 2005); *see also id.* (setting out the process by which fair market value is to be determined); TEX. EDUC. CODE ANN. § 11.155(a) (Vernon 2006).

Third, another provision in chapter 272, which the Legislature recently adopted, expressly applies only to leases of real property between political subdivisions. *See* Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005); *see also* H.J. OF TEX., 80th Leg., R.S. 2580–81 (2007) (reporting the bill's passage in the House on third reading); S.J. OF TEX., 80th Leg., R.S. 1984 (2007) (reporting the bill's passage in the Senate on third reading). The new provision, which will be codified at section 272.005, permits a political subdivision to promote its public purpose by leasing property to another political subdivision in certain circumstances:

> (a) To promote a public purpose of the political subdivision,
> a political subdivision may:

---

[2]While chapter 253 contains other provisions relating to the sale or lease of municipal real property, none apply here. *See, e.g.*, TEX. LOC. GOV'T CODE ANN. §§ 253.006 (Vernon 2005) ("Lease of Municipal Hospital or Swimming Pool"), 253.009 ("Conveyance of Adjoining Property to Municipal Development Corporation"), 253.011 ("Conveyance to Nonprofit Corporation for Public Use").

(1)  lease property owned by the political subdivision to another political subdivision . . . ;

. . . .

(b)  In acting under Subsection (a), the political subdivision:

(1)  shall determine the terms of the lease . . . so as to promote and maintain the public purpose;

(2)  may provide for the lease of the property . . . at less than fair market value; and

(3)  is not required to comply with any competitive purchasing procedure or any notice and publication requirement imposed by this chapter or other law.

Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005); *see also* TEX. CONST. art. III, § 52(a). Section 272.005 took effect immediately upon the Governor's approval. *See* H.J. of Tex., 80th Leg., R.S. 6652 (2007). As we have indicated, a municipality is a political subdivision of the state. *See City of Galveston*, 217 S.W.3d at 473–74. A school district also is a political subdivision of the state. *See City of Seagoville v. Lytle*, No. 05-06-01016-CV, 2007 WL 1696213, at *4 (Tex. App.—Dallas June 13, 2007, no pet. h.); *Watts v. Double Oak Indep. Sch. Dist.*, 377 S.W.2d 779, 780 (Tex. Civ. App.—Fort Worth 1964, no writ).

Fourth, chapter 26 of the Parks and Wildlife Code protects public parks and recreational lands by regulating the use or taking of parkland, among other properties.[3] *See generally* TEX. PARKS & WILD. CODE ANN. ch. 26 (Vernon 2002). Under section 26.001(a), a municipality may not approve the use or taking of parkland until the municipality has made certain determinations:

A . . . municipality of this state may not approve any program or project that requires the use or taking of any public land designated and used prior to the arrangement of the program or project as a park . . . , unless the . . . municipality, acting through its duly authorized governing body or officer, determines that:

(1)  there is no feasible and prudent alternative to the use or taking of such land; and

(2)  the program or project includes all reasonable planning to minimize harm to the land, as a park . . . , resulting from the use or taking.

---

[3]Certain lands are not subject to chapter 26, but the facts you provide suggest that none of the exclusions apply here. *See* TEX. PARKS & WILD. CODE ANN. § 26.004 (Vernon 2002); Request Letter, *supra* note 1, at 2–5.

*Id.* § 26.001(a). The municipal governing body may make the required determinations only after publishing notice and holding a hearing "as required by this chapter." *Id.* § 26.001(b); *see also id.* § 26.001(c) (requiring the governing body or officer to consider "clearly enunciated local preferences"); *id.* § 26.002 (articulating notice requirements).[4]

## II.     Analysis

For purposes of analysis, we separate your questions by reference to the underlying transaction, i.e., lease or sale. We begin by analyzing a home-rule municipality's authority to lease parkland to a school district and a school district's authority to enter such a lease. We do not in this opinion consider whether the City's charter or code of ordinances restricts the City's lease or sale of parkland to the District.[5]

### A.     The lease of parkland

#### 1.     A home-rule municipality's authority

The City is authorized to lease its property in accordance with statutory limitations. *See Dallas Merch.'s*, 852 S.W.2d at 490–91 (citing *MJR's Fare*, 792 S.W.2d at 573). Two of the statutes, Local Government Code section 272.005 and Parks and Wildlife Code chapter 26, may apply to the proposed lease.

Under section 272.005 of the Local Government Code, the City may lease the property to the District—a political subdivision—for less than fair market value and without complying with any

---

[4]You cite section 306.038 of the Local Government Code, located in a chapter authorizing a home-rule municipality with a population of more than 40,000, such as the City, to create a board to acquire, improve, equip, maintain, finance, or operate municipal parks. *See* TEX. LOC. GOV'T CODE ANN. §§ 306.001, .011 (Vernon 2005); UNITED STATES CENSUS BUREAU, 2000 CENSUS OF POPULATION: POPULATION FINDER (population of El Paso, Texas is 563,662), *available at* http://quickfacts.census.gov/qfd/states/48/4824000.html (last visited July 24, 2007). Section 306.038(b) authorizes a parks board to

> enter into a contract, lease, or agreement with any person relating to the management, operation, or maintenance of any . . . land[] or property of any other nature under the management and control of the board. Such a lease or agreement for the use of board properties by others may not exceed a term of 40 years.

TEX. LOC. GOV'T CODE ANN. § 306.038(b) (Vernon 2005). Section 306.038(b) on its face applies only to leases executed by a parks board. It does not apply to a home-rule municipality's authority to enter a lease relating to city-owned parkland, and you ask about only a home-rule municipality's authority in this regard. We do not consider in this opinion whether section 306.038(b) could be read to authorize a park board established under chapter 306 to lease property for the construction of a school building.

[5]You ask whether, if the City's charter restricts "the City's authority to convey city [parkland], . . . these restrictions [would] be applicable to a lease or conveyance from the City to an independent school district." Request Letter, *supra* note 1, at 4–5. This office does not construe city charters. *See* Tex. Att'y Gen. Op. Nos. GA-0530 (2007) at 6; GA-0449 (2006) at 1.

competitive purchasing procedure nor with statutory notice and publication requirements if the City first "determine[s] the terms of the lease . . . so as to promote and maintain the [City's] public purpose."[6] Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005(b)). *But see infra* pp. 6–7 (discussing section 272.005(b)'s effect on Parks and Wildlife Code chapter 26's notice requirements). Whether the terms of a particular lease promote and maintain a municipal public purpose is a question of fact that cannot be determined in an attorney general opinion. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process.").

In addition, the City must comply with Parks and Wildlife Code chapter 26 if the lease will require a use or taking of parkland. Section 26.001 expressly applies to "*any program or project* that requires the use or taking of" parkland and thus encompasses a lease. TEX. PARKS & WILD. CODE ANN. § 26.001(a) (Vernon 2002) (emphasis added). As the Fort Worth court of appeals determined in 1990, section 26.001 "does not come into play where the project is of the same type or character as the use sought to be protected and the land is capable of being employed for that use after implementation of the project even as before." *Persons v. City of Fort Worth*, 790 S.W.2d 865, 874 (Tex. App.—Fort Worth 1990, no pet.). Thus, for example, the Fort Worth court concluded that section 26.001 does not apply to the transfer of city parkland to the city zoo. *See id.* at 876. Neither this office nor any court has considered whether the transfer of parkland to a school district for purposes of constructing school facilities "is of the same type or character" or, conversely, requires the use or taking of parkland. *Id.* at 874. Whether a particular conveyance of parkland is subject to section 26.001 is a fact question that cannot be resolved in the opinion process. *See* Tex. Att'y Gen. Op. No. GA-0446 (2006) at 18 ("Questions of fact are not appropriate to the opinion process."). If it is a use or taking, section 26.001 requires the City to consider whether any "feasible and prudent alternative to the use or taking of [the] land" exists and whether "the program or project includes all reasonable planning to minimize harm to the land, as a park . . . , resulting from the use or taking." TEX. PARKS & WILD. CODE ANN. § 26.001(a) (Vernon 2002); *see id.* § 26.001(b).

Because newly enacted Local Government Code section 272.005(b)(3) expressly abrogates statutory notice and publication requirements outside of chapter 272, we must consider whether, if both Local Government Code section 272.005 and Parks and Wildlife Code chapter 26 apply, the City must comply with chapter 26's notice requirements. *See* Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005(b)(3)). Section

---

[6]With respect to the necessity of a public purpose, section 272.005(a) implicitly recognizes that article III, section 52(a) of the Texas Constitution limits expenditures of public funds. Under article III, section 52(a), the Legislature may not authorize a county, city, town, or political subdivision of the State to lend credit or grant public funds. *See* TEX. CONST. art. III, § 52(a); *Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 384 (Tex. 2002). A political subdivision may, consistently with article III, section 52(a), transfer funds to another political subdivision, but only if the funds are used for a purpose for which the granting political subdivision is authorized to expend money. *See Harris County Flood Control Dist. v. Mann*, 140 S.W.2d 1098, 1104 (Tex. 1940) (applying article III, section 52(a) to an intergovernmental transfer of funds); *State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd). The expenditure of municipal funds for school district purposes generally does not serve a municipal purpose and is not within a municipality's scope of authority. *See* Tex. Att'y Gen. Op. No. GA-0069 (2003) at 6 (quoting Tex. Att'y Gen. Op. No. JM-1255 (1990) at 7).

272.005(b)(3) does not define the phrase "notice and publication requirement." *Id.* While section 272.005's apparent purpose is to enable political subdivisions to lease property owned by another political subdivision without submitting to statutory competitive procurement requirements, section 272.005(b)(3) on its face does not limit itself to notice and publication requirements that are tied to competitive procurement requirements. *See* HOUSE RESEARCH ORG., BILL ANALYSIS, Tex. H.B. 2618, 80th Leg., R.S. (2007) at 1–2; *see also* HOUSE COMM. ON COUNTY AFFAIRS, BILL ANALYSIS, Tex. H.B. 2618, 80th Leg., R.S. (2007) (stating that the bill would "allow counties to lease county-owned property to local, state[,] and federal government entities without the need for competitive bidding"). In our opinion, section 272.005(b)(3) refers to "notice and publication requirement[s]" like those found in competitive procurement statutes requiring a political subdivision to publish notice of a proposed transaction in a newspaper of general circulation published in the area. Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005(b)(3)); *see, e.g.,* TEX. LOC. GOV'T CODE ANN. § 252.041(a) (Vernon 2005) (notice and publication requirement relating to a municipality's competitive sealed bidding procedure); *id.* § 262.025(a) (County Purchasing Act competitive bidding notice and publication requirements); *cf.* TEX. GOV'T CODE ANN. §§ 2051.041–.053 (Vernon 2000 & Supp. 2006) (providing for notice by publication in a newspaper where a specific statute does not specify the manner of the publication). We do not construe section 272.005(b)(3) to apply to notice requirements that do not involve publication. *See, e.g.,* TEX. GOV'T CODE ANN. § 551.041 (Vernon 2004) (requiring the governmental body to notify the public of subjects to be discussed at a meeting).

Parks and Wildlife Code chapter 26 requires a political subdivision that is considering conveying parkland to provide two types of notice: (1) written notice "to the person, organization, department, or agency that has supervision of the land proposed to be used or taken"; and (2) notice to the public published in a qualifying newspaper of general circulation. TEX. PARKS & WILD. CODE ANN. § 26.002(a), (c) (Vernon 2002). As we have construed section 272.005(b)(3), it abrogates chapter 26's requirement that the political subdivision notify the public of the contemplated taking of parkland by publication in a qualifying newspaper of general circulation. *See id.* § 26.002(c). On the other hand, section 272.005(b)(3) does not affect chapter 26's requirement that the political subdivision provide written notice to the entity that supervises the parkland. *See id.* § 26.002(a). Similarly, section 272.005(b)(3) does not abrogate chapter 26's hearing requirement, nor the requirement that the City determine that no "feasible and prudent alternative to the use or taking of [the] land" exists and that "the program or project includes all reasonable planning to minimize harm to the land, as a park, . . . resulting from the use or taking." *Id.* § 26.001(a) (Vernon 2002); *see id.* § 26.001(b) ("finding required by Subsection (a) . . . may be made only after notice and a hearing").

In sum, the City may lease parkland to the District in compliance with Local Government Code section 272.005 and Parks and Wildlife Code chapter 26. If the lease complies with Local Government Code section 272.005, the City is not subject to chapter 26's requirement that the public receive notice in a qualifying newspaper of general circulation. We turn next to the school district's authority to enter the lease.

### 2.    A school district's authority

A school district's board of trustees is expressly authorized to acquire real and personal property and to "govern and oversee the management" of the district's public schools. TEX. EDUC. CODE ANN. § 11.151(a)–(b) (Vernon 2006). A board of trustees also has express statutory authority to expend school district funds to acquire "school buildings and sites by leasing" and to accomplish "other purposes necessary in the conduct of the public schools." *Id.* § 45.105(c). Based upon these statutes, this office suggested in 2005 that a school district is authorized to lease land for school district purposes. *See* Tex. Att'y Gen. Op. No. GA-0321 (2005) at 2–3.

A school district may not, however, enter a lease that commits future revenues unless specifically authorized by law. A school district's annual budget must "cover[] all . . . proposed expenditures . . . for the following fiscal year," and the approval of an expenditure exceeding the budgeted amount is a criminal offense. TEX. EDUC. CODE ANN. §§ 44.002(a), .052 (Vernon 2006). In 1968 the Texas Supreme Court recognized "the rule that a contract calling for expenditures in excess of current year funds creates a deficiency debt which is beyond the authority of the trustees of a school district." *Nat'l Sur. Corp. v. Friendswood Indep. Sch. Dist.*, 433 S.W.2d 690, 693 (Tex. 1968). A school district may avoid creating a deficiency debt if the lease "retains" to the school district's board of trustees "the continuing right to terminate at the expiration of each budget period of the local government during the term of the contract"; is conditioned "on a best efforts attempt by the [school district's board] to obtain and appropriate funds for payment of the contract"; or "contains both the continuing right to terminate and the best efforts conditions." TEX. LOC. GOV'T CODE ANN. § 271.903(a) (Vernon 2005); *see also id.* § 271.903(b) (defining "local government" to include a school district). So long as the lease does not commit the District's future revenues, the District may enter a long-term lease with a right to renew for an indefinite period.

Finally, with respect to the proposed lease, you ask about the District's authority to expend school district funds to construct a school and related facilities on leased property. *See* Request Letter, *supra* note 1, at 1. As this office recently has noted, a school district has express statutory authority to construct school buildings, and no statutory provision limits "a school district to constructing school district buildings on land owned by the school district in fee simple." Tex. Att'y Gen. Op. No. GA-0321 (2005) at 3 (citing TEX. EDUC. CODE ANN. §§ 44.031–.041, 45.105(c) (Vernon 1996 & Supp. 2004–05)). Consequently, a school district may construct school facilities on leased property if the school district determines: (1) that the expenditure serves a school district purpose; (2) that the expenditure is adequately controlled to ensure that the school's purpose is accomplished; and (3) that the school district will receive a return benefit from the expenditure. *See id.; accord* Tex. Att'y Gen. Op. No. GA-0076 (2003) at 6–7; *see also* TEX. CONST. art. III, § 52(a) (prohibiting the expenditure of public funds for private purposes).

### B.    The sale of parkland

Your remaining questions pertain to the City's authority to sell parkland to the District. *See* Request Letter, *supra* note 1, at 1 (questions 2–4).

Section 272.001(b) of the Local Government Code expressly prohibits a sale to a governmental entity with eminent-domain powers "for less than the fair market value of the land or interest unless the conveyance [or] sale . . . is with . . . abutting property owners who own the underlying fee simple." TEX. LOC. GOV'T CODE ANN. § 272.001(b) (Vernon 2005). You have not indicated that the District is an abutting property owner that owns the underlying fee simple. *See generally* Request Letter, *supra* note 1. Accordingly, the City may not sell the property to the District for less than its fair market value.

And the City must comply with chapter 26 of the Parks and Wildlife Code—including the notice and publication requirements—if the sale "requires the use or taking of" parkland. TEX. PARKS & WILD. CODE ANN. § 26.001(a) (Vernon 2002); *see supra* p. 6 (outlining determinations and procedures required by chapter 26). Section 272.005 of the Local Government Code expressly applies to a lease of public land, not a sale, and thus would not affect the City's notice and publication obligations. *See* Act of May 14, 2007, 80th Leg., R.S., H.B. 2618, § 1 (to be codified at TEX. LOC. GOV'T CODE ANN. § 272.005). If the City complies with and makes the determinations required by section 26.001(a), it may sell parkland to the District.

## S U M M A R Y

A home-rule municipality may lease parkland to an independent school district if the lease will serve a public purpose of the municipality in compliance with Local Government Code section 272.005. If the lease requires the use or taking of parkland, the municipality must hold a hearing and make the determinations required by Texas Parks and Wildlife Code chapter 26. With respect to a lease of public land, Local Government Code section 272.005(b)(3) abrogates the requirement in Parks and Wildlife Code chapter 26 that the municipality notify the public of the school district's proposed use or taking of parkland by publishing notice in a qualifying newspaper of general circulation.

A school district may not enter a lease that commits future revenues, but a school district may enter a long-term lease that allows the school district's board of trustees to terminate the lease at the end of each budget period or is conditioned on the school board's best efforts to obtain and appropriate sufficient funds for the contract, or both. The school district may construct a school and related facilities on the leased property.

A home-rule municipality may sell parkland to an independent school district for no less than fair market value. The municipality must comply with Parks and Wildlife Code chapter 26, including its notice and publication requirements, if the sale requires the use or taking of parkland.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

NANCY S. FULLER
Chair, Opinion Committee

Kymberly K. Oltrogge
Assistant Attorney General, Opinion Committee