COMMUNITY VISUAL
COMMUNICATIONS,
INC., Plaintiff,

v.

CITY OF SAN ANTONIO, Defendant.

No. CIV.A.SA–96–CA1067FB.

United States District Court,
W.D. Texas,
San Antonio Division.

Oct. 2, 2000.

Becki Fahle, San Antonio, TX, for plaintiff.

Michael Patrick Hodge, Office of Atty. General, San Antonio, TX, for defendant.

### AMENDED ORDER CONCERNING PENDING MOTIONS FOR SUMMARY JUDGMENT

BIERY, District Judge.

Before the Court are Defendant City of San Antonio's Motion for Summary Judgment and Plaintiff Community Visual Communications, Inc.'s Motion for Summary. The Court has considered both motions and the various responses thereto. For the following reasons, the Court finds the defendant's motion has merit and should be granted.

*Motion for Summary Judgment Standard*

A motion for summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law". FED. R. CIV. P. 56(c). A dispute concerning a material fact is considered "genuine" if the evidence "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). It is not the Court's function to "weigh the evidence and determine the truth of the

matter but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The Court must determine if there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* Of course, in ruling on a motion for summary judgment, all inferences drawn from the factual record is viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

If the party moving for summary judgment carries its burden of producing evidence which tends to show there is "no genuine issue of material fact, the nonmoving must then direct the court's attention to evidence in the record sufficient to establish the existence of a genuine issue of material fact for trial." *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). The nonmoving party may not rely upon mere conclusory allegations to defeat a motion because allegations of that type are not competent summary judgment evidence and are insufficient to defeat a proper motion. *Id.* In fact, if the "nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation," a motion for summary judgment may be granted even in cases "where elusive concepts such as motive or intent are at issue." *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994).

The party opposing the motion also may not rest on the allegations contained in the pleadings but "must set forth and support by summary judgment evidence specific facts showing the existence of a genuine issue for trial." *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998). In meeting this requirement, the party must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports his or her claim." *Id.* Rule 56 of the Federal Rules of Civil Procedure does not impose upon this Court the "duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Id.* (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909. 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992)). A summary judgment will only be precluded by disputed facts which are material, i.e. "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505 (1986). Factual disputes which are irrelevant or unnecessary to the issue will not be preclude summary judgment. *Id.*

Because this case is before the Court on cross motions for summary judgment, each party's motion for summary judgment must be considered separately with each movant bearing the burden of presenting evidence to support its motion. *Dresser Indus., Inc. v. United States,* 73 F.Supp.2d 682, 686 (N.D.Tex.1999); *Dutmer v. City of San Antonio,* 937 F.Supp. 587, 589–90 (W.D.Tex.1996).

Defendant contends in its motion that it is entitled to summary judgment because (1) plaintiff's claim is moot because the business is no longer operating as a sexually oriented business (SOB); (2) the defendant has properly exercised its police power; (3) the ordinance, as amended, does not vest unbridled discretion in the licensor; (4) the SOB ordinances are narrowly tailored to serve a substantial governmental interest; (5) the SOB ordinances provide for adequate alternative avenues of adult expression; (6) ordinance # 87443 does not arbitrarily grandfather "Type A" nonconforming uses; and (7) the distance requirement of 1,000 feet included

in the SOB ordinances is not arbitrary. Plaintiff contends in its motion for summary judgment that: (1) it has standing to bring this suit and its complaints about the ordinance are not moot even though it has reconfigured its business; (2) the ordinance is unconstitutional under the United States Constitution because it vests unbridled discretion in the licensor; it is not a legitimate time, place, and manner restriction because it does not materially advance the substantial governmental interest, and it does not provide adequate alternative avenues of communication; (3) the ordinance is unconstitutional under the Texas Constitution because the standard used is the least restrictive means test and the defendant has not offered any evidence that the distance restrictions are the least restrictive means necessary to advance its stated interests; (4) plaintiff's retail business is not an SOB under ordinance # 87443, and therefore, the ordinance is being applied to it arbitrarily; and (5) the distance requirement of 1000 feet is arbitrary and capricious. The Court need not address the plaintiff's previous challenges concerning police power and arbitrary grandfathering because plaintiff withdrew its complaint on those issues in its response to the City's Motion for Summary Judgment.

### Factual Background and Procedural History of the Case

On April 27, 1995, the San Antonio City Council passed and approved Ordinance # 82135 to regulate the locations available to operate sexually oriented businesses. Ordinance # 82135 became effective on June 1, 1995, and Ordinance # 87433, which amended # 82135, was passed on February 26, 1998, and became effective March 10, 1998. These ordinances were passed out of concern about the harmful secondary effects of sexually oriented businesses on the surrounding community.

The ordinances prohibit SOBs from being located within 1,000 feet of residential areas, places of worship, schools, and public parks. The ordinances also prohibit SOBs from locating within 1,000 feet of another SOB, and prohibit SOBs from the Central Business District.

On June 22, 1995, plaintiff received notice from the Department of Buildings Inspections of its obligations under SOB Ordinance # 82135 to obtain a new certificate of occupancy. On September 18, 1995, plaintiff applied for a certificate of occupancy and a "Type B" Nonconforming Use Rights. On September 19, 1995, plaintiff's business was inspected by the defendant City's building officials, as required by the City's Building Code, in order to receive a certificate of occupancy. Plaintiff's business failed to pass the mechanical, electrical, and fire inspections.

Plaintiff did not contact the defendant's building officials for reinspection to receive her certificate of occupancy and as a result, the Director of the Department of Building Inspections notified plaintiff on June 7, 1996, that the "permit application for a certificate of occupancy had not been completed and expired on March 18, 1999." Plaintiff was reminded at that time that the mechanical, electrical, and fire inspections were still pending, and was warned that since it was in violation of the SOB ordinance, enforcement measures would be taken to "ensure compliance with all codes." Plaintiff was instructed to contact the Department of Building Inspections within 5 days after receipt of notice to inform the Department of its intentions regarding the operation of its business. The business was closed down on September 25, 1996; plaintiff never contacted the Department of Building Inspections as instructed.

As a result of the business close down, plaintiff filed suit in this Court on October 4, 1996, challenging the constitutionality of the defendant City's SOB Ordinance # 82135. On December 13, 1996, this Court granted plaintiff's request for a temporary injunction declaring that the ordinance was deficient in providing a time limit within which the City was required to act on a request for a certificate of occupancy. In response to this ruling, the City amended its SOB Ordinance by passing Ordinance # 87443. Also during this time, plaintiff obtained a certificate of occupancy as a newsstand and currently does not operate as an SOB.

As defendant points out in its motion for summary judgment, the only significant differences between Ordinance # 82135 and Ordinance # 87443 are (1) the addition of a time limit to act on an application for an SOB certificate of occupancy, and (2) a change in the percentage of floor space dedicated to adult material in the SOB definition. Ordinance # 87443 requires the building inspector to issue or deny a certificate of occupancy within 30 days of application. Defendant contends this corrects the deficiency previously found by this Court. Plaintiff believes a deficiency still exists.

### Is Plaintiff's Claim Moot Because the Business Is No Longer Operating as an SOB?

■ In its motion for summary judgment, defendant argues that because plaintiff has obtained a certificate of occupancy as a newsstand and not as an SOB, the case is now moot because no actual controversy exists between the parties. In plaintiff's response to the motion and in its own motion for summary judgment, plaintiff contends the controversy is not moot because although plaintiff admits it is not an SOB as currently constituted, if Ordinance # 87443 is declared unconstitutional or limited, plaintiff will once again carry more adult materials without having to comply with the "onerous adult business restrictions" currently in place. Thus, plaintiff argues it not only has standing to litigate but also its claims are not moot.

In reviewing the issues presented in this case, the Court agrees that not only does the plaintiff have standing to litigate the issues presented, plaintiff's claims are not moot just because plaintiff has decided not to continue to operate as an SOB until the controversy is resolved. *See Cooper v. McBeath,* 11 F.3d 547, 550, 551 (5th Cir.)(neither of traditional bases for mootness existed: the presented issue concerning the constitutional issue was still quite live and the parties still possessed a "legally cognizable interest in the outcome"), *cert. denied,* 512 U.S. 1205, 114 S.Ct. 2675, 129 L.Ed.2d 810 (1994); *Trimble v. City of New Iberia,* 73 F.Supp.2d 659, 664 (W.D.La.1999)(party invoking federal court authority must show actual or threatened injury; injury fairly traced to the conduct, and favorable decision likely to redress injury-plaintiffs discontinued practice as psychic readers and healers in accordance with ordinance out of fear of prosecution-judgment declaring ordinance unconstitutional would redress plaintiffs' injuries as they would be able to practice skills without fear of prosecution). Defendant's motion requesting dismissal based on mootness is DENIED.

### Does Ordinance # 87443 Vest Unbridled Discretion in the Licensor?

■ Plaintiff originally challenged Ordinance # 82135 as being unconstitutional on its face because it gave unbridled discretion to the licensor. Plaintiff argued that the Ordinance required every business falling under the definitions of the Ordinance to apply for a new Certificate of Occupan-

cy within 90 days after receipt of the notice to apply but provided no time certain by which the licensor must either grant or deny the application for the license.[1] Therefore, plaintiff claimed the ordinance was invalid on its face as an unconstitutional prior restraint. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 226–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

In issuing the preliminary injunction, this Court found it was undisputed the Ordinance at issue failed to include a time limit in which a new Certificate of Occupancy would be either granted or denied. Although the application for the Certificate had to be made within ninety days after the Sexually Oriented Business received notice to apply for the new Certificate of Occupancy and the application had to be made in order to continue the business at the existing location, the Ordinance failed to provide a time frame in which the application would either be granted or denied.

■ Unbridled discretion is found to exist "when a licensing scheme does not impose adequate standards to guide the licensor's discretion" and "when a licensing scheme lacks adequate procedural safeguards to ensure a sufficiently prompt decision." *Chesapeake B & M, Inc. v. Harford County*, 58 F.3d 1005, 1009–10 (4th Cir.1995); *see FW/PBS*, 493 U.S. at 225–26, 110 S.Ct. 596. An ordinance which "makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official—as by requiring a permit or license which may be granted or withheld in the discretion of such official—is an unconstitutional censorship or prior restraint

upon the enjoyment of those freedoms." *FW/PBS* 493 U.S. at 226, 110 S.Ct. 596 (quoting *Shuttlesworth v. Birmingham*, 394 U.S. 147, 151, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969)). Likewise, the failure to place time limits within which a license or certificate of occupancy is issued creates "the possibility that constitutionally protected speech will be suppressed." *Id.* Thus, because the Ordinance on its face failed to impose any time limit on the decisionmaker concerning the new Certificate of Occupancy required for a sexually oriented businesses to continue its operation, the Ordinance was found to be unconstitutional. *FW/PBS, Inc. v. Dallas*, 493 U.S. 215, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990).

Based on this Court's order, the defendant sought to remedy the unconstitutional infirmity by enacting the ordinance now in issue, Ordinance # 87443. However, plaintiff contends that defendant only partially remedied the infirmity because it only addressed the first kind of unbridled discretion and not the second kind which plaintiff argues still exists. Plaintiff contends the second kind of unbridled discretion exists when a licensor has a deadline but the necessary inspectors do not. Plaintiff argues in its motion for summary judgment that where a business is required to apply for a license and a condition to receiving that license is inspection by various departments such as fire marshal, building codes, et al., and those subordinate inspections upon which the license is contingent do not have deadlines of their own, unbridled discretion is still vested in the licensor, and the ordinance is still an unconstitutional content-based restriction.[2]

---

1. The provision of Ordinance 82135 at issue read as follows:

   *New Certificate of Occupancy Required.* The business owner or the owner's agent must, within ninety (90) days after receipt of notice to apply for a new Certificate of

   Occupancy as one of the above three classes of property use rights as Sexually Oriented Business in order to continue such business at the existing location.

2. Plaintiff recognizes in its motion that even content-based prior restraints may be legiti-

In its own motion for summary judgment and in several responses, defendant asserts Ordinance # 87443 does include a time limit for when certificates of occupancy applications are to be granted or denied. The Ordinance provides that the Director of Building Inspections shall either issue or deny a certificate of occupancy to a sexually oriented business not more than 30 business days subsequent to the date of the applicant's submission of an application therefor. Regardless of whether the application is granted or denied, the applicant is notified of the action by certified mail, return receipt requested. Further, the ordinance provides that a certificate of occupancy will not be withheld if the sexually oriented business is determined to be in compliance with all applicable sections of the Code and an appeal process is provided for any denial of a certificate. Defendant also claims the Ordinance does not involve the issuance of a license as was the case in *FW/PBS, Inc. v. Dallas,* upon which plaintiff relies. Instead, the Ordinance operates as a land use/zoning type regulation.

The section of the Ordinance which is still subject to controversy reads as follows:

The Director of Building Inspections shall either issue or deny a certificate of occupancy to a sexually oriented business not more than thirty (30) business days subsequent to the date of the applicant's submission of an application therefor. If granted, the applicant shall be notified of such action by certified mail, return receipt requested. If denied, the applicant shall be notified of such action and the reason(s) therefore by certified mail, return receipt requested.

The issuance of a certificate of occupancy shall not be withheld if the sexually oriented business is determined to be in compliance with all applicable sections of this Code.

Plaintiff argues Ordinance # 87443 is still a content-based restriction because it requires the applicant to get inspections without providing any deadlines for those inspections. Plaintiff again relies on the decision in *FW/PBS* to support its argument.

In *FW/PBS,* the ordinance provided that the "chief of police shall approve the issuance of a license by the assessor and collector of taxes to an applicant within 30 days after receipt of an application." *FW/ PBS, Inc. v. Dallas,* 493 U.S. 215, 110 S.Ct. 596, 605, 107 L.Ed.2d 603 (1990). The ordinance also provided that the "license may not issue if the 'premises to be used for the sexually oriented business have not been approved by the health department, fire department, and the building official as being in compliance with applicable laws and ordinances.'" *Id.* The Court explained that the ordinance provided "no means by which an applicant may ensure that the business is inspected within the 30–day time period within which the license is purportedly to be issued if approved." *Id.* Although the city argued that applicants are given the telephone numbers for the various inspection agencies so they may contact them and arrange for these inspections, that measure was not found to place any limits on the time in which the city would inspect the business and make them eligible for a sexually oriented business license. *Id.* at 605–06. As

mate in some circumstances but are held to the strictest scrutiny requiring the government to demonstrate a compelling interest in the restraint in order to withstand constitu-

tional muster. Plaintiff claims there is no apparent compelling interest iterated in the ordinance, and plaintiff believes the defendant cannot enunciate such an interest now.

a result, the city's regulatory scheme was found to allow an "indefinite postponement of the issuance of a license." *Id.* at 606.

■ As set forth above, Ordinance # 87443 does not contain contingency type language similar to that found objectionable in *FW/PBS*. As plaintiff notes in its motion, where a condition of receiving the license is inspection by various departments such as fire marshal, building codes, et al., and those subordinate inspections upon which the license is contingent do not have a deadline of their own, unbridled discretion is vested in the licensor. However, plaintiff has not pointed out to this Court where such a condition in the Ordinance exists. In fact, it was not until the Court received Defendant's Response to Plaintiff's Motion for Summary Judgment that it understood what inspections were required to be made. According to the response, section 109.3 of the 1994 Uniform Building Code provides that the Director of Building Inspections may not issue a certificate until all necessary inspections have been completed. Defendant argues this has the "obvious effect of requiring the various inspectors to complete their inspections within the thirty-day deadline."

In *City News & Novelty, Inc. v. Waukesha*, 231 Wis.2d 93, 604 N.W.2d 870, 880 (Wis.App.1999), the ordinance required that the "building inspector shall inspect the establishment prior to the renewal of a license to determine compliance with the provisions of this ordinance." The court was not persuaded that based on the holding in *FW/PBS*, the ordinance was unconstitutional. Because the ordinance provided that the inspection must occur prior to the renewal of the license, and the application had to be granted or denied within twenty-one days of receipt, the onus was on the building inspector to complete the inspection before the license was renewed. The court found the language in the ordinance did "not compare to FW/PBS because the ordinance there simply stated that a license will not be issued if the premises 'have not been approved by the health department, fire department, and the building official.'" *Id.* Analogously, Ordinance 87443 requires the Director of Building Inspections, not the city police chief, to either issue or deny a certificate of occupancy not more than 30 business date subsequent to the date of the application. As defendant points out, this too requires the inspectors to complete their inspections within the 30 days period. Moreover, plaintiff has only brought forth a facial challenge to the Ordinance.[3] As written, there is no contingency language requiring inspections and plaintiff has not challenged the constitutionality of the 1994 Uniform Building Code in this case.

## Is Ordinance # 87443 Narrowly Tailored to Serve a Substantial Governmental Interest?

In support of its motion for summary judgment that the ordinance fulfills a substantial governmental interest, defendant attaches to its motion a copy of the unpub-

---

**3.** Part of the summary judgment evidence presented by the defendant is an affidavit by Jose A. "Andy" Gomez who gained knowledge of the events surrounding this case while serving as the Administrator to the Board of Adjustment. He states that on September 19, 1999, he along with the building inspectors and the police department's vice unit found plaintiff's business to be in violation of the City's Building Code. The business failed its mechanical, electrical, and fire inspections. In June of 1996, plaintiff's business was notified that the application for a certificate of occupancy was incomplete and had expired on March 18, 1996. "The owner never contacted the Building Inspection Department and never completed her mechanical, electrical, or fire inspections." It would appear, therefore, that any as applied challenge to the Ordinance would fail as well.

lished opinion of the Fifth Circuit Court of Appeals in *NATCO, Inc. v. City of San Antonio*, in which Ordinance # 82135 was found to serve a substantial government interest. In the opinion, the Fifth Circuit stated:

Ordinance # 82135 is properly analyzed as a form of time, place and manner regulation. *See Lakeland Lounge of Jackson, Inc. v. City of Jackson*, 973 F.2d 1255, 1257 (5th Cir.1992)(noting that an ordinance that limits the areas of a city in which adult businesses may operate is properly analyzed as a time, place and manner regulation). The Ordinance presumptively violates the First Amendment unless it is "designed to serve a substantial governmental interest," and does not "unreasonably limit alternative avenues of communication." *City of Renton v. Playtime Theatres, Inc.* 475 U.S. 41, 47, 106 S.Ct. 925, 928, 89 L.Ed.2d 29 (1986). The City bears the burden of justifying the challenged Ordinance. *See J & B Entertainment, Inc. v. City of Jackson*, 152 F.3d 362, 370 (5th Cir.1998).

The City has justified Ordinance # 81235 as fulfilling a substantial governmental interest if it has shown that the City passed the Ordinance to control bad "secondary effects" associated with sexually oriented businesses. *See Lakeland Lounge*, 973 F.2d at 1257 ("Local governments can restrict adult businesses in order to control the bad 'secondary effects' "). We first note that the preamble to the Ordinance explains with great detail and specificity the sec-

ondary effects that the Ordinance was designed to address. *Cf. J & B Entertainment* 152 F.3d at 374 (stating that "the mere incantation of the words 'secondary effects' may not save a statute 'formulated without specific attention to specific secondary effects' "). Moreover, the record evidence show that the City relied on studies provided by the City Council relating to secondary effects, and that it obtained legal advice before passing the Ordinance. Accordingly, we find that the City has justified Ordinance # 82135 has fulfilling a substantial government interest.

*NATCO, Inc. v. City of San Antonio*, No. 98–50645 at page 5–6 (June 2, 1999). Defendant presents this decision in support of its motion because Ordinance # 87443 contains the same language as Ordinance # 82135 at issue in NATCO.[4] As additional support for its motion, the defendant also provides a copy of an interdepartmental correspondence sheet dated February 20, 1998, which indicates that the amending of Ordinance # 82135 was initiated in order to address a ruling in this case, *Community Visual Communications, Inc. v. City of San Antonio*. As a result of the ruling, the major changes to the Ordinance # 82135 were described in this interdepartmental memo as: (1) excepting airports from being included as residential zoning districts; (2) re-defining an adult bookstore; and (3) requiring the Department of Building Inspections to either approve or deny a Certificate of Occupancy Request within 30 business days. The City Attorney concluded the memo by

---

**4.** The preamble confirms that Ordinance 87443 amends Ordinance 82135 passed and approved April 27, 1995, and re-enacts said ordinance by regulating the locations available for sexually oriented businesses. The preamble also confirms that the City relied on land use studies of Garden Grove, California, Seattle, Washington, and Austin, Texas, con-

cerning the secondary effects of sexually oriented businesses and their effects at 1,000 feet and other studies from other Texas cities such as Austin, Houston, Dallas, Beaumont, and Amarillo and other states concerning the unhealthy sexual conduct and drug use which tends to be aggravated by sexually oriented businesses.

recognizing that the First Amendment protects these businesses from unreasonable government interference and the proposed changes do nothing to infringe on those rights. A second memo dated February 24, 1998, reflects that the mayor and members of the city council were provided for review, prior to the public hearing in regard to the amendments, copies of the City of Garden Grove study, the City of Seattle study, and the City of Austin study. Copies of these studies were also attached for this Court's review.

Although plaintiff agrees this Court may consider *NATCO* as persuasive authority, plaintiff contends there is abundant binding contrary precedent.[5] Plaintiff contends the City is required to produce at least some evidence tending to support its contention that the Ordinance is narrowly tailored to serve a substantial governmental interest. Plaintiff argues the self-serv-

ing, conclusory assertions contained in the preamble are insufficient and defendant cannot simply rely on the unpublished opinion without precedential value which found the prior Ordinance # 82135 constitutional when that finding was not necessary to the holding in the case. Despite this assertion, plaintiff notes in a footnote that the City Council was not required to prove that it relied on the studies again when it passed the successor Ordinance # 87443 if the City showed that the City Council or its legislative drafters actually relied upon the recited studies in the passage of Ordinance # 82135.

Before addressing the ordinance at issue herein, the Court would like to point out a recent decision from another circuit in which the court held the circuit rule declaring unpublished opinions are not precedent as unconstitutional under Article III "because it purports to confer on the fed-

5. Plaintiff argues that even if one or more of the NATCO plaintiffs might have made an adequate representative of the rights of the plaintiff herein, the decision of the trial court was not necessary to the decision on the merits. The Fifth Circuit noted there was no evidence that the City of San Antonio was enforcing the licensing provisions of Ordinance # 82135 against NATCO because of the injunction issued in this case. Plaintiff maintains "[i]f there was no case or controversy, then the remainder of the opinion was, in fact, not necessary to the judgment. The court did not even have jurisdiction to enter an opinion once it determined there was no case or controversy. Even if the opinion may be properly used against the Plaintiff in this case as to collaterally estop the relitigation of certain issues, those parts of the opinion not necessary to the judgment may not. Since the parts of the opinion cited by the City of San Antonio were not necessary to the outcome of the first action, they cannot be used to preclusive effect here, especially where the plaintiff was not a party to the *Natco* action."

In reviewing the unpublished opinion, the Court notes that the Fifth Circuit found that because of the preliminary injunction issued in this case, the City conceded the licensing

provisions of Ordinance # 82135 were unconstitutional and as a result, the City has not enforced the licensing provisions against NATCO. The court found that "on this issue there is no case or controversy." The opinion continues by indicating that NATCO was arguing on appeal that the district court erred in finding the location restrictions were content-neutral time, place, and manner restrictions. Because of the presumption that the ordinance violates the First Amendment unless it is designed to serve a substantial governmental interest and does not unreasonably limit alternative avenues of communication, the court was required to discuss whether # 82135 fulfilled a substantial governmental interest. The court concluded the evidence was sufficient to support such a finding.

This Court also reviewed the file in the *NATCO, Inc. v. City of San Antonio* case concerning the issues raised. The Court found that plaintiff's counsel herein was involved as counsel in that litigation, and in the Plaintiffs' Response to Defendant's Summary Judgment Motion and Incorporated Cross–Motion for Summary Judgment raised the argument that the remainder of the ordinance, excluding the licensing scheme, was not content neutral.

eral courts a power that goes beyond the 'judicial'". *Anastasoff v. United States,* 223 F.3d 898, 899 (8th Cir.2000). Rule 28A(i) in that circuit provided:

> Unpublished opinions are not precedent and parties generally should not cite them. When relevant to establishing the doctrines of res judicata, collateral estoppel, or the law of the case, however, the parties may cite any unpublished opinion. Parties may also cite an unpublished opinion of this court if the opinion has persuasive value on a material issue and no published opinion of this or another court would serve as well. . . .

*Id.* at 899. Similarly, the rule in this circuit provides:

> Unpublished opinions issued on or after January 1, 1996, are not precedent, except under the doctrine of res judicata, collateral estoppel or law of the case (or similarly to show double jeopardy, abuse of the writ, notice, sanctionable conduct, entitlement to attorney's fees, or the like). An unpublished opinion may, however, be persuasive. An unpublished opinion may be cited, but if cited in any document being submitted to the court, a copy of the unpublished opinion must be attached to each document. . . .

5th CIR. R. 47.5.4. Given the similarities in the rules, this Court notes the beginning of a possible trend and finds the discussion of the issue worth consideration by this circuit given the previous ruling in *NATCO* on the same issues by the Fifth Circuit. The court in *Anastasoff* began its discussion as follows:

> Inherent in every judicial decision is a declaration and interpretation of a general principle or rule of law. This declaration of law is authoritative to the extent necessary for the decision, and must be applied in subsequent cases to similarly situated parties. These princi-

ples, which form the doctrine of precedent, were well established and well regarded at the time this nation was founded. The Framers of the Constitution considered these principles to derive from the nature of judicial power, and intended that they would limit the judicial power delegated to the courts by Article III of the Constitution.

*Id.* at 899–900. The court further explained that it in no way meant to suggest that the Framers "expected or intended the publication (in the sense of being printed in a book) of opinions." *Id.* at 903. In fact, the judges and lawyers of that day "recognized the authority of unpublished decisions even when they were established only by memory or by a lawyer's unpublished memorandum." *Id.* The court went on to acknowledge that the case was not about whether opinions should be published but rather about their authoritative effect. *Id.* at 904–05. The fact a decision is unpublished does not equate to it being "secret." To that court's knowledge, "every opinion and every order of any court in this country, at least of any appellate court, is available to the public. You may have to walk into a clerk's office and pay a per-page fee, but you can get the opinion if you want it. Indeed, most appellate courts now make their opinions, whether labeled 'published' or not, available to anyone on line." *Id.*

The court also addressed the practicalities of the matter as follows:

> It is often said among judges that the volume of appeals is so high that it is simply unrealistic to ascribe precedential value to every decision. We do not have time to do a decent enough job, the argument runs, when put in plain language, to justify treating every opinion as a precedent. If this is true, the judicial system is indeed in serious trouble, but the remedy is not to create an underground body of law good for one

place and time only. The remedy, instead is to create enough judgeships to handle the volume, or, if that is not practical, for each judge to take enough time to do a competent job with each case. If this means that backlogs will grow, the price must still be paid. At bottom, rules like our Rule 28A(i) assert that courts have the following power: to choose for themselves, from among all the cases they decide, those that they will follow in the future, and those that they need not. Indeed, some forms of the non-publication rule even forbid citation. Those courts are saying to the bar: "We may have decided this question the opposite way yesterday, but this does not bind us today, and, what's more, you cannot even tell us what we did yesterday." As we have tried to explain in this opinion, such a statement exceeds the judicial power, which is based on reason, not fiat.

*Id.* The court also acknowledged that it was not advocating a rigid doctrine of eternal adherence to precedent but only that precedent be changed if the reasoning of the case is exposed as faulty or other exigent circumstances exist which require such change. Any such departure from precedent should be clearly stated and the reasoning for the departure clearly explained. *Id.*

The court concluded that the discretion to depart from the law set out in a prior decision without any reason to differentiate the case and even though the earlier decision may be well-considered and directly on point is "inconsistent with the doctrine of precedent; even in constitutional cases, courts 'have always required a departure from precedent to be supported by some "special justification" ' ". Thus, the rule which allows courts the complete discretion to determine which judicial decisions will bind it and which will not is unconstitutional. *Id.* at 905.

Likewise, this Court respectfully requests that reconsideration of the rule be made in this circuit because this Court would have been aided had the *NATCO* decision been binding precedent. Having so said, the Court will return to the issues at hand.

■ In deciding whether an ordinance is designed to address undesirable secondary effects and is therefore content-neutral or is intended instead to suppress speech, courts "must give great deference to the stated goals of the City Council." *N.W. Enters. Inc. v. City of Houston,* 27 F.Supp.2d 754, 776 (S.D.Tex.1998). "It is the legislature, and not the courts, which determines how much testimony is enough to require city action in redressing a perceived problem." *Id.* (*quoting SDJ v. City of Houston,* 636 F.Supp. 1359, 1367 (S.D.Tex.1986)). Although the purpose statements contained in the preamble of an ordinance are relevant, a court should not rely exclusively on a city council's conclusory statements concerning its intent. *Id.* A court must also consider "whether the City Council relied on evidence in the legislative record from which it could have reasonably determined that negative secondary effects associated with adult businesses actually exist and that the proposed regulations would in some way address these effects." *Id.* The court required the City of Houston, in that case, to show that in adopting the ordinance the members of its city council had a "reasonable basis for believing that these provisions would address negative secondary effects actually and currently attributable to sexually oriented businesses in Houston. The Court cannot merely surmise this fact from vague references to evidence in other cities or surmise the current validity of the City Council's purported beliefs regarding specific secondary effects from previous evi-

dence used to support earlier versions of the Ordinance." *Id.* at 778.

In reaching this conclusion, the court referred to the opinion in *Lakeland Lounge v. City of Jackson,* 973 F.2d 1255 (5th Cir.1992), which was cited by the Fifth Circuit in deciding NATCO. In *Lakeland,* the record provided sufficient information to show the city council had sufficient information to review in order to enact a permissible ordinance. *Id.* at 1258. First, the court noted that the office of planning, city attorney's office, and the ordinance review committee were found to have drafted the ordinance and it was without question that the drafters considered and relied on the studies concerning secondary effects of sexually oriented businesses while drafting the amendment. *Id.* The court found it permissible for the city council to place reliance on others to do research because "state law requires that the planning board make recommendations to the council regarding zoning amendments." *Id.* The court also found it was not necessary for the evidence to show the council members personally reviewed the studies of secondary effects. *Id.* Second, although the evidence showed the city council did not receive a written report or summary of the studies, a meeting was held at which five of the seven members of the city council were present and at this meeting, various persons discussed the secondary effects and the work that had gone into the preparation of the proposed ordinance. *Id.* Third, the court relied on the language contained in the amendment which indicated the concern by the city council of the secondary effects. The court recognized the preamble language might not save a statute formulated "with-

out specific attention to secondary effects." However, in the context of the case where:

(1) the drafters of the ordinance did rely upon studies of secondary effects, (2) a majority of the councilmembers did receive some information about the secondary effects during an open hearing of the planning board, and (3) nothing in the record otherwise suggest impermissible motives on the part of the councilmembers, the language of the preamble show the city council's awareness of the studies upon which the planning staff relied when framing the ordinance and reflects that a reasonable legislature with constitutional motives could have enacted the ordinance.

*Lakeland,* 973 F.2d at 1259; *see J & B Entertainment, Inc. v. City of Jackson,* 152 F.3d 362, 372, 374 (5th Cir.1998)(stating *Lakeland* "is consonant with our case law upholding ordinance regulating adult entertainment where the government has introduced sufficient evidence to justify the ordinance on the basis of preenactment legislative findings and reaffirming a preambulatory clause may be used as evidence in support of an ordinance if properly explained").

■ Here, the record indicates that copies of the studies were provided to the mayor and city council members for review along with interdepartmental memos concerning the amendment from the City's attorney prior to its passage. The lengthy and detailed preamble contained in Ordinance # 82135 as well as in # 87443 provides evidence that the City Council members had a reasonable basis for believing the ordinance would address negative secondary effects actually and currently attributable to sexually oriented business in San Antonio.[6] Moreover, this Court is also

---

6. The preamble provides evidence that the council relied on land use studies of secondary effects of sexually oriented businesses and

a study of sexually oriented business effects at 1,000 feet; the objectives considered by the council; the council's concern about the at-

persuaded by the decision in *NATCO* which found the City's evidence sufficient to support a finding that the predecessor ordinance to # 87443, ordinance # 82135 originally at issue in this case, fulfilled a substantial governmental interest.[7]

Despite the foregoing, plaintiff also argues in its response to defendant's motion for summary judgment that in addition to proof that the City relied on studies or other extrinsic evidence the City must show actual justification for the increase in distance restrictions from Ordinance # 49724 in which the distance restriction was 500 feet. In support of this assertion, plaintiff relies on *N.W. Enters., Inc. v. City of Houston*, 27 F.Supp.2d 754 (S.D.Tex.1998).

In *N.W. Enters.*, the plaintiffs challenged the increase of the minimum distance between adult businesses and protected land uses from 750 to 1,500 feet and the increase from 1,000 to 1,500 the radius for calculating residential areas. *Id.* at 800. Plaintiffs' primary argument was the City enacted the increases 'without considering any new studies or evidence which establishes that the 750 and 1,000 foot distances required by the previous version of the Ordinance were insufficient to satisfy the legislative interests that the district court and the Fifth Circuit acknowledged existed in SDJ.' *Id.* Plaintiffs also argued that the adverse secondary effects the City claimed the increase distance requirements would address did not actually exist or at a minimum, fact issues existed as "whether these alleged effects exist and whether the new requirements will actually alleviate such effects." *Id.* at 801. In response, the court explained:

> It is not this Court's role to weigh competing evidence on these factual issues or even to determine whether the evidence upon which the City claims to have relied was highly probative or reli-

---

mosphere of public places in the City caused by allowing sexually oriented businesses to be legally located next door to another business; the adverse impact on property values and family activities; that zoning is a legitimate and reasonable restriction to ensure sexually oriented businesses are located to minimize the adverse secondary effects; the possible harmful effects on children and minors exposed to such businesses; council's desire to minimize and control the negative effects and protect the health, safety, and welfare of the citizens; a finding by the council that it is appropriate to amortize those sexually oriented businesses located within 1000 feet of a protected property; that the council considered decisions of the Supreme Court regarding the regulation of sexually oriented businesses; council's intent not to discriminate on the basis of gender but to enact a zoning ordinance which addresses the negative secondary effects on nearby property and on children; and that council's intent is not to suppress speech related activities protected by the First Amendment but to enact a zoning ordinance which addresses the negative secondary effects of sexually oriented businesses on certain nearby property and children.

7. Because the *NATCO* case was originally decided by Judge H.F.Garcia, who also sits in the San Antonio Division of the Western District of Texas, the court was able to view the file and therefore the evidence which supported his finding the ordinance content neutral. In his opinion, Judge Garcia references that the City showed it considered land use studies from no less than fifteen cities and considered decisions of the United States Supreme Court in drafting its ordinance. The City had attached to its motion for summary judgment filed on June 24, 1997, affidavits from the Mayor of San Antonio and one of the city council members at the time Ordinance # 82135 was passed and who were named as defendants in that case. Both the mayor and council member stated they participated in city council meetings and executive sessions regarding the proposed ordinance and voted to approve the ordinance "based upon studies provided to the city council regarding the secondary effects of sexually oriented businesses, and also based upon legal advice received by the city council from the city's legal department."

able. This Court is not permitted to examine Plaintiffs' substantive policy arguments regarding the accuracy of the committee's purported findings or the impact, or lack of impact, sexually oriented businesses in Houston actually have on surrounding areas. In *SDJ*, the district court likewise declined to consider the plaintiffs' policy arguments against the 1986 version of the Ordinance and rejected the plaintiffs' proffered evidence by explaining that "[t]he fact that other experts hold conflicting opinions on the effects of sexually oriented businesses on property values is irrelevant to the Court's first amendment inquiry."

This Court's duty instead is merely to determine whether the City Council had before it at least a requisite, albeit relatively minimal, amount of evidence to support each of the challenged amendments to the Ordinance....[T]he relevant issue to the question of whether each challenged amendment is content-neutral is whether the City Council's Sexually Oriented Business Committee had before it even a minimal threshold amount of evidence upon which a reasonable Council member could have relied in determining whether the purported negative secondary effects actually exist and whether the amendment to the Ordinance would somehow help alleviate those effects.

*Id.* at 801. After reviewing the record, the court concluded that the increase in distance requirements was not based "on any evidence of secondary effects that specifically justify these increases." *Id.* Both the preamble to the ordinance and the transcripts of city council meetings revealed that "Committee members believed that they could impose whatever locational restrictions they wanted on adult businesses so long as the restrictions left those businesses with an adequate number of alternative sites to which they could legally relocate." *Id.* In defense of the ordinance, the City tried to rely on evidence documents in the legislative history for previous versions of the ordinance. Although the court recognized this was the type of evidence that might have been relevant to the case if it had in fact been considered, there was no indication that anyone, i.e. council members or their staffs or the city's legal department, "actually contemplated how this eleven to fourteen year-old factual matter could support the increased distance requirements the City enacted." *Id.* at 803. The court mentioned in a footnote that it "searched the legislative record in vain for evidence that someone, such as Council members, staff, or legal advisers looked at specific evidence from Houston's earlier legislative histories, or even studies from other cities in the process of formulating the new distance requirements." *Id.* at 803 n. 102.

Based on the copy of the previous Ordinance # 49724 provided by the plaintiff, the Court finds that ordinance was enacted in 1978. Defendant has produced evidence that the city council members were provided with copies of at least three recent land use studies of secondary effects of sexually oriented businesses conducted in 1991, 1989, and in 1986. The 1986 study studied the effects of sexually oriented businesses at 1,000 feet. Council members indicated in the preamble their concern about the atmosphere of public places caused by allowing sexually oriented businesses to be legally located next door to another such business, allowing them as close as 500 feet from the property line of residential property, allowing them next door to churches, parks, secondary and primary schools and their concern about the adverse impact on property values and family activities given that such close proximity to the aforementioned land uses can re-

duce the value of residential property, reduce retail trade in the vicinity, reduce family use of nearby public parks, and generally reduce property values and tax revenues to the City.

Therefore, unlike the City of Houston, the City of San Antonio had before it studies showing a link to the increase in distance requirements and evidence to show the council members were provided with these studies. This is sufficient to uphold that requirement. *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 236, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990)(1977 study by city of Los Angeles that cursorily considered the effect of adult motels on surrounding neighborhoods combined with reasonableness of legislative judgment adequate to support city's determination about motels permitting room rentals for fewer than 10 hours to be included in licensing scheme); *N.W. Enters., Inc. v. City of Houston,* 27 F.Supp.2d 754, 811 (S.D.Tex.1998)(recognizing that Supreme Court rejected in *FW/PBS* the argument that City had no basis to conclude rental of motel rooms for fewer than 10 hours produced adverse secondary effects because the city council had before it a 1977 study that cursorily considered the effect; this was adequate to support city's determination). Accordingly, this Court finds the ordinance is narrowly tailored to serve a substantial government interest.

### Does the Ordinance Provide Adequate Alternative Avenues?

■ Relying on the holding in *NATCO, Inc. v. City of San Antonio,* defendant contends in its motion for summary judgment that adequate alternative avenues of communication exist under Ordinance # 87443 because it contains the same language and covers the same area as Ordinance # 82135. With respect to Ordinance # 82135, the Fifth Circuit held, although in an unpublished opinion, that alternative avenues of communication exist:

> We also find that the City has met its burden to show that alternative avenues of communication exist. Although NATCO claims that Ordinance # 82135 disburses sexually oriented business to areas in Bexar county where it is impossible to operate, the record evidence show that the City has granted permits to five sexually oriented businesses allowing them to operate indefinitely. NATCO has not offered any evidence that counters this summary judgment evidence.

*NATCO v. City of San Antonio,* No. 98–50645 (5th Cir. June 2, 1999) at page 6. Defendant points out in its motion that Ordinances # 82135 and # 87443 do not attempt to ban SOBs altogether but regulate SOBs in certain areas of the City. In support of its motion, the affidavit of Jose A. Gomez is attached. Mr. Gomez gained his knowledge while serving as Administrator to the Board of Adjustment. He is presently employed as Development Services Ombudsman for the City of San Antonio Buildings Inspections Department.

According to Mr. Gomez, prior to the adoption of Ordinance # 82135, the City developed a list of existing SOBs located in the City of San Antonio and found a total of 30. Each SOB was then notified of the impending ordinance and were advised of the new regulations. Of the 30 SOBs listed, 4 or 5 were no longer in operation when the ordinance went into effect. Six of the 30 SOBs notified met the 1,000 foot separation requirement in the ordinance. These six were all issued certificates of occupancy without expiration dates. Fifteen of the SOBs operating at the time requested a hearing for a Type A permit. Five of these permits were granted, and the remaining SOBS were granted Type B nonconforming use rights for a period of

one year. At the end of one year, these SOBs had either to shut down or apply for amortization.

Mr. Gomez also stated that since the passage of Ordinance # 87443, one SOB had been approved for a Certificate of Occupancy and three more are in the planning/construction stages. The City anticipates that each of these SOBs will apply for a certificate of occupancy when construction is completed. With respect to plaintiff's business, plaintiff closed its location, moved across the street, and has chosen not to operate as an SOB. Instead, plaintiff has obtained a certificate of occupancy to operate as a newsstand.

Plaintiff argues in its motion for summary judgment that there are not an adequate number of sites which are legally and physically available. At a minimum, plaintiff claims the City has the burden of coming forward with at least two legally and physically available sites (one for the plaintiff and one for the plaintiff in the companion case *Encore, Inc. v. City of San Antonio*). Plaintiff also argues the City's reliance on the affidavit of Mr. Gomez is misplaced. Mr. Gomez fails to specify the existence of alternative avenues at all or fails to show the existence of property he or the City contend meet the requirements of the ordinance.

As set forth in *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 53, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986), "the First Amendment requires only that Renton refrain from effectively denying respondents a reasonable opportunity to open and operate an adult theater within the city." De-

fendant has previously defended this same issue before the Fifth Circuit Court of Appeals and based on the record which apparently showed that the City had granted permits to five sexually oriented businesses, the City was found to meet its burden. The affidavit by Mr. Gomez in this case shows that at the time the Ordinance # 82135 was passed six out of 30 of the SOBS in existence met the distance requirements. Since the passage of the amendment, Ordinance # 87443, one SOB has been approved for a certificate of occupancy and three more are in the planning stages. This implies that there are available sites within the City of San Antonio. Plaintiff has not provided summary judgment evidence to the contrary. Therefore, this Court agrees with the finding by the Fifth Circuit Court of Appeals that the City has met its burden that alternative avenues of communication exist.[8]

### Is the Distance Requirement of 1,000 Feet Arbitrary and Capricious?

■ In discussing whether the Ordinance at issue was narrowly tailored to serve a substantial governmental need, the Court looked at what evidence the City had before it in enacting the new Ordinance and the new distance requirement. As defendant argues in its motion, the increase arose from evaluating several studies which were conducted after its Ordinance setting the distance at 500 feet was enacted. Copies of these studies have been provided to the Court. In addition, the preamble to the ordinance indicates the increase was meant to combat the

---

8. The Court would have been aided in its determination as to alternative avenues of communication if additional evidence as to available locations would have been provided. Perhaps because the type of evidence relied on herein is the same type of evidence found to be sufficient in *NATCO* for both the court sitting in the same division as this Court and

the Fifth Circuit Court of Appeals, the City found it unnecessary to provide anything additional. Moreover, plaintiff did not attach any affidavits to its motion for summary judgment indicating it could not find a location to operate in the City after the City showed that new SOBs are in fact finding places to operate in the City.

negative secondary effects of those businesses on the surrounding community. Having previously discussed the evidence, the Court agrees with the defendant that the distance requirement is not arbitrary and capricious.

*Does the Texas Constitution Provide Even Greater Protection Than The Federal Constitution on the Question of Prior Restraint?*

Plaintiff contends in its motion for summary judgment that the Texas Constitution and related case law provides even greater protection than the federal constitution on the question of prior restraint. In Texas, the proponent of the local restriction has the burden of showing that the location restriction is the least restrictive means of preventing or mitigating secondary effects while still providing access. In response, defendant relies on the decision on *Woodall v. City of El Paso*, 49 F.3d 1120 (5th Cir.1995), which it claims holds the standard is the same for evaluating the Ordinance under the Texas Constitution.

In *Woodall*, the plaintiffs maintained that the standard for determining the validity of an El Paso ordinance was different under the Texas Constitution, and they were entitled to pursue a separate claim because of that difference. *Id.* at 1127. The court first set out the applicable provisions from both constitutions and then explained:

> The Texas Supreme Court has held that free speech rights under the Texas Constitution may be broader than those provided by the Federal Constitution in certain cases. The Adult Businesses argue that under *Davenport* the free speech clause of the Texas Constitution requires the City to show that the Ordinances protect a "compelling government interest" and are the "least restrictive means" possible to protect this

interest, whereas under *Renton* the United States Constitution only requires the City to show that the Ordinances protect a "substantial government interest" and do not "unreasonably limit" alternative avenues of communication.

The district court determined that the greater protections set out in *Davenport* apply only to prior restraints and not to time, place and manner restrictions in land use restrictions of sexually oriented businesses. The district court noted that *Lindsay v. Papageorgiou*, 751 S.W.2d 544 (Tex.App.-Houston [1st Dist.] 1988, writ denied), the only Texas case directly on point, held that the *Renton* standard applies under Texas Constitution as well as under the United States Constitution. The Adult Businesses contend that the *Davenport* standard was extended to land-use cases in *Ex Parte Tucci*, 859 S.W.2d 1, and that *Lindsay* has been impliedly overruled. We are unpersuaded.

In *Tucci*, a plurality of Justices held that the *Davenport* standard should have been applied to a temporary restraining order which regulated abortion protest during the 1992 Republication Party Convention in Houston, Texas. The *Tucci* Court addressed the applicability of *Davenport* to restrictions on political protest. It did not address whether the more stringent standard was applicable in land-use cases involving adult businesses. The simple fact of the matter is that there is no direct Texas authority supporting the Adult Businesses' position that the *Davenport* standard should be expanded to land-use cases involving adult businesses, and the only Texas authority directly on point opted for the *Renton* standard. If the intermediate Texas courts are wrong about Texas law in this area, we are content to wait until the Texas Supreme Court corrects their error. We hold that the Adult Busi-

nesses' claims under the Texas Constitution should be determined under the same standard as used under the United States Constitution.

*Woodall,* 49 F.3d at 1127–28 (citations omitted). Since *Woodall,* there has been no Texas Supreme Court case addressing the issue. However, another intermediate Texas court refused to be persuaded as was the court in *Woodall* that the decision in *Tucci* impliedly overruled *Lindsay.* The court noted:

It has been argued, although not in this case, that *Tucci* (decided after *Lindsay* ) impliedly overruled *Lindsay.* We are not persuaded by that argument. *Tucci* concerned political speech the most protected form of speech. No mention is made in *Tucci* regarding sexually oriented expression, nor of the *Lindsay* decision. In addition, the Fort Worth Court of Appeals has since held that the broader Texas free speech protection found in *Tucci* does not extend to exotic dancing. The basis for these holdings is that there is less interest in protecting "material on the borderline between pornography and artistic expression than in free dissemination of ideas of social and political significance." We so hold.

*Kaczmarek v. State,* 986 S.W.2d 287, 291 (Tex.App.-Waco 1999, no pet.). Based on the foregoing, this Court agrees with the defendant that whether the ordinance is reviewed under the Texas Constitution or the United States Constitution, the same standard is to be applied. As such, plaintiff's request for a least restrictive means review is denied and the challenges to the ordinance are upheld as constitutional under Texas law as well.

### Is Plaintiff's Business a Sexually Oriented Business Under Ordinance # 87443?

Plaintiff argues that it is not a sexually oriented business under the Ordinance and therefore the Ordinance is being applied to it arbitrarily. Plaintiff appears to argue that because all of its inventory is for off-premises consumption only, it does not fall under the Ordinance. However, the language of the Ordinance reads that an adult bookstore is "an Adult Bookstore, Adult Novelty Store, or Adult Video Store where more than 20% of its inventory (that is offered for sale, rental or viewing for any form of consideration to on-premises customers) consists of. . ." The Court does not find plaintiffs' argument plausible that the ordinance's requirement of on-premises consumption applies to inventory offered for sale or rental.

Plaintiff also argues that the floor space of its business is not dedicated to inventory which is subject to the Ordinance. In support of its arguments, plaintiff attaches the affidavit of Elizabeth Kocian, the president of Community Visual Communications. Ms. Kocian admits that when the City passed Ordinance # 82135, her business Broadway Video Exchange "as constituted fell under the ordinance." Ms. Kocian stated that ordinance did not provide guidelines to make her store fall outside of its restrictions. However, since Ms. Kocian's affidavit, Ordinance 87443 was enacted which now sets out at what percentage the establishment is considered an adult bookstore, i.e. 20% adult inventory, whereas the previous Ordinance used the term "substantial" without any percentage given and was enforced at 25% of the inventory. Although plaintiff alleges in its motion that less than 20% of the floor space is dedicated to inventory which is the subject of the ordinance, there is no statement in the affidavit or any other evidence submitted by the plaintiff which supports that assertion.

In response to these arguments, defendant contends that plaintiff applied for an

SOB certificate of occupancy when it moved locations. Defendant maintains that if plaintiff did not consider itself an SOB, why would it apply for an SOB certificate of occupancy and how can it have standing to file this lawsuit?

The Court has considered plaintiff's arguments and defendants response, and finds no summary judgment evidence to support a finding that the Ordinance now in issue was arbitrarily applied to plaintiff. Moreover, the Court notes that plaintiff applied for and received its certificate of occupancy to operate as a newsstand and is currently operating as a newsstand.

Accordingly, based on the foregoing, IT IS HEREBY ORDERED that Defendant City of San Antonio's Motion for Summary Judgment as to all of plaintiff's claims herein (docket # 57) is GRANTED, Plaintiff Community Visual Communications, Inc.s' Motion for Summary Judgment (docket # 73) is DENIED, and this case is DISMISSED.

It is so ORDERED.